David **HOPPE**, Plaintiff,

v.

**BAXTER HEALTHCARE CORPORATION,**
Defendant.

**FLOWOPTIC SENSORS, INC.,** Plaintiff,

v.

**BAXTER HEALTHCARE CORPORATION,**
Defendant.

Civ. A. Nos. 94–10323–REK,
94–10509–REK.

United States District Court,
D. Massachusetts.

Feb. 22, 1995.

Stephen Y. Chow, Jerry Cohen, Perkins, Smith & Cohen, Ernest B. Murphy, Murphy & O'Connell, Boston, MA, for David Hoppe.

Jeffrey D. DiNicola, Murphy & O'Connell, Ernest B. Murphy, Murphy & O'Connell, Boston, MA, for Flowoptic Sensors Inc.

Timothy J. Malloy, Stephen F. Sherry, John S. Artz, McAndrews, Held & Malloy, Chicago, IL, Cherie L. Krigsman, McDermott, Will & Emory, Gordon T. Walker, Cherie L. Krigsman, McDermott, Will & Emory, Boston, MA, for Baxter Healthcare Corp.

## MEMORANDUM AND ORDER

KEETON, District Judge.

Now before the court are Defendant's Motions for Summary Judgment in the consolidated cases brought by Flowoptic Sensors and David Hoppe. Because the cases were consolidated (Docket No. 21, July 7, 1994) after some of the papers pertinent to these motions were filed, there is occasional coincidental overlap in docket numbers.

The following documents relating to defendant's summary judgment motion against Flowoptic Sensors, Inc., are before the court:

Defendant's Motion for Summary Judgment (Docket No. 8, filed July 7, 1994) and Memorandum in Support, with affidavits attached as exhibits (Docket No. 9);

Plaintiff's Memorandum in Opposition (Docket No. 25, filed August 30, 1994) and the Affidavits of David E. Hoppe (Docket No. 26) and Walter D. Wekstein (Docket No. 27);

Defendant's Reply Memorandum (Docket No. 34, filed September 15, 1994);

Plaintiff's Statement of Contested Facts (Docket No. 37, filed September 22, 1994), with a Supplemental Declaration of David E. Hoppe attached as Exhibit D;

Defendant's Motion to Strike Plaintiff's Supplemental Declaration of David Hoppe (Docket No. 42, filed September 28, 1994);

Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's Supplemental Declaration of David Hoppe (Docket No. 43, filed October 3, 1994).

Plaintiff's [Supplemental] Memorandum in Opposition to Defendant Baxter's Motion for Summary Judgment (Docket No. 48, filed January 26, 1995), with supporting materials (Docket No. 49), and Defendant's Reply (Docket No. 54, filed February 2, 1995).

The following documents relating to defendant's summary judgment motion against David Hoppe are before the court:

Defendant's Motion for Summary Judgment (Docket No. 8, filed May 24, 1994) and Memorandum in Support, with an affidavit and other exhibits (Docket No. 9), and Defendant's Statement of Uncontested Facts (Docket No. 7);

Plaintiff's Memorandum in Opposition (Docket No. 13, filed June 7, 1994), accompanied by Declaration of David Hoppe in Opposition (Docket No. 12);

Baxter's Reply Memorandum (Docket No. 15, filed June 20, 1994);

Response of Plaintiff Hoppe to Reply of Defendant Baxter (Docket No. 19, filed July 18, 1994), accompanied by Supplemental Declaration of David Hoppe (Docket No. 20);

Baxter's Supplemental Memorandum (Docket No. 31, filed September 9, 1994);

Supplemental Opposition of Plaintiff David Hoppe (Docket No. 33, filed September 13, 1994), with Second Supplemental Declaration of Plaintiff David Hoppe (Docket No. 32);

Baxter's Response to Plaintiff's Second Supplemental Declaration (Docket No. 36, filed September 16, 1994);

Third Supplemental Declaration of Plaintiff David Hoppe (Docket No. 39, filed September 23, 1994);

Letter from Defendant Baxter (Docket No. 35, filed September 15, 1994).

Letter from Defendant Baxter (Docket No. 50, filed February 1, 1994).

## I

The two consolidated actions present different claims by different, but related plaintiffs. David E. Hoppe ("Hoppe") has sued Baxter Healthcare, Inc. ("Baxter") for patent infringement. A counterclaim by Baxter against Hoppe seeks a declaratory judgment of non-infringement. Flowoptic Sensors, Inc. ("Flowoptic") has sued Baxter for breach of contract. A counterclaim by Baxter against Flowoptic seeks the balance due for a shipment of goods.

Baxter seeks summary judgment against both plaintiffs, but not for all claims. Baxter seeks summary judgment against Flowoptic on Flowoptic's breach of contract claim, but not on Baxter's counterclaim for balance due. Baxter seeks summary judgment against Hoppe on the claim of infringement and Baxter's necessarily related counterclaim of non-infringement.

## II

### A. The Infringement Action (*Hoppe v. Baxter*)

Both the infringement and contract causes of action concern a device called a bearingless flowmeter that is used to measure the low rates of fluid flow. A typical flowmeter has an inlet for receiving fluid; a jet ring with passages that convey the fluid to a rotor, which spins within a vortex chamber; and an outlet that allows the fluid to escape. The incoming fluid, once it passes through the holes in the jet ring, reaches the rotor and causes it to spin. The number of revolutions of the rotor is measured by an optical sensor to determine the amount of fluid that passes through the flowmeter.

The bearingless flowmeter was patented in 1969 by an inventor named McNabb. The device, however, did not provide a perfect measure of fluid flow because the rotor brushed against the walls of the vortex cham-

ber rather than spinning perfectly freely within the chamber.

A key challenge to developers of the flowmeter was, and apparently remains, to stabilize the rotor so that it does not brush against the walls of the vortex chamber as it spins. Plaintiff Hoppe experimented in the early 1970s with variations in the number of jet passages, believing that it was the number of passages that determined the stability of the rotor. He concluded that the flowmeter would not work satisfactorily unless there were more than eight jets.

Hoppe applied for a patent for this discovery. Initially, he was turned down; ultimately, he received U.S. Patent No. 4,015, 474 ("the Hoppe Patent", or "the '474 patent").

The '474 patent contains only one claim. That claim, in relevant part, is for "[a]n improved rotor-stabilized bearingless flowmeter comprising ... at least nine circumferentially spaced jet passages." The particular components of the bearingless flowmeter— notably, the jet ring and the rotor—are not separately patented.

Hoppe developed a plastic version of the flowmeter. His company, Bearingless Flowmeters, manufactured the flowmeter for the Renal Care Division of Johnson & Johnson in 1981–82, which used it in dialysis machines. After the Renal Care Division was sold to what is now Baxter Healthcare Corporation, Jack Goss, a former research and development manager with that division, formed a venture with Hoppe in 1985, Digital Precision, that continued to manufacture the flowmeters for Baxter's Renal Care Division. Mr. Goss had access to all the dimensions and materials compositions of the flowmeter as it had been developed by Hoppe.

From 1985 until its demise in 1990, Digital Precision sold only completely assembled dialysis flowmeters to Baxter, a maker of dialysis and other machines. But Digital Precision was not a completely reliable supplier, so Baxter preferred to purchase key components, such as jet rings and rotors, from Bearingless (also a Hoppe corporation) in Massachusetts. Baxter would sell these components back to Digital Precision, which

would, in turn, incorporate them into its assembly of complete flowmeters. Baxter would then purchase the assembled flowmeters from Digital Precision.

In 1991–92, Digital Precision, the joint venture of Hoppe and Goss, was terminated in settlement of a lawsuit for improper accounting. Hoppe's new company, Flowoptic, took over the assembly of flowmeters for Baxter. Hoppe asserts that Baxter improperly acquired trade secret information from Goss and used this information to develop and assemble its own flowmeter.

Baxter indeed manufactured its own flowmeters between 1984 and 1993, which it sold for use in connection with its dialysis equipment. Baxter purchased jet rings and rotors from Hoppe during this period and employed them in assembly of flowmeters it sold for use with its dialysis machines. Hoppe alleges that Baxter was not authorized to use jet rings purchased from Bearingless in assembly of its own flowmeters; rather, Baxter was purportedly authorized only to resell them to a Hoppe corporation (Digital Precision, then Flowoptic) for final assembly by that corporation and subsequent sale to Baxter. Commencing in December 1993, Baxter assembled and sold flowmeters with jet rings and rotors that it alleges were entirely of its own design.

The jet rings purchased from Hoppe during the period 1984–1993 had 12 jet passages. Flowmeters assembled by Baxter and sold commencing in December 1993 incorporated a jet ring that has only eight jet passages. Baxter alleges that every flowmeter sold by Baxter with a jet ring having more than eight passages was purchased from Hoppe. Hoppe does not outright deny that Baxter's flowmeters incorporated jet rings with eight passages, but insists that only through laboratory analysis that Hoppe cannot afford to conduct would the true number of jet passages in the Baxter rings be determined.

Baxter also purchased rotors from Bearingless between 1984 and 1993. Baxter used rotors purchased from Hoppe in assembly of flowmeters it sold for use with its dialysis machines. Baxter also purchased rotors from Hoppe for use as replacement parts for worn rotors that Baxter would replace in the

field. When Digital Precision was dissolved in 1992, Baxter ceased purchasing rotors from Hoppe. At some point, Hoppe observed that certain flowmeters returned by Baxter to Hoppe's company—presumably because Baxter deemed them unsatisfactory and held Hoppe responsible for them—contained rotors that Hoppe's company had not manufactured.

## B. The Contract Action (*Flowoptic v. Baxter*)

Hoppe initiated a meeting between Flowoptic and Baxter officials on July 24, 1992. Present were Hoppe, Flowoptic's attorneys, and Baxter officials Augustus Azel and Charles Davis. One of the two parties—it is in dispute which one—suggested that they enter into a five-year contract. In fact, Baxter contends that Flowoptic presented it with a copy of a five-year exclusive supply agreement at the meeting. Flowoptic denies this, and further alleges that Azel orally committed Baxter to entering into a five-year requirements contract. Both parties agree that Flowoptic sent Azel a draft Five–Year Contract in November 1992. Azel did not sign the agreement, but the parties dispute whether he indicated that Baxter was willing to enter into a long-term requirements contract.

In October 1992, Flowoptic and Baxter executed a purchase order agreement for 1992–93 and for 1993–94.

In March 1993, Azel and Davis met with Hoppe and his attorney Walter Wekstein at the Vista Hotel in Waltham, Massachusetts ("the Vista meeting"). The events of that meeting are in dispute. According to Flowoptic, the purpose of the meeting was to tend to the details of a five-year requirements contract between Flowoptic and Baxter for the manufacture and delivery of Hoppe flowmeters. According to Flowoptic, all the terms of the contract were agreed to, and were reflected in the first draft agreement Wekstein forwarded to Baxter. Baxter denies that either of its representatives, Azel or Davis, assented to Flowoptic's proposed terms. Azel did not sign the Wekstein draft, which it received soon after the meeting.

In July 1993, Azel, Davis, and Charles Mattenson, Baxter corporate counsel, met with Wekstein and Hoppe at Wekstein's office. Plaintiff insists, and defendant denies, that Azel reaffirmed as a "done deal" that a five year requirements contract was to be issued by Baxter to Flowoptic, and that it remained only for a final draft to be prepared and executed. In fact, defendant alleges that its counsel, Mattenson, informed Hoppe and Wekstein that Baxter would not enter into an exclusive supply contract.

During the meeting, Flowoptic and Baxter executed a one-year purchase order for Flowoptic's supply of flowmeters to Baxter for the period October 1, 1993 to September 30, 1994. Flowoptic maintains that this one year purchase order was intended by both parties to cover the first year of a five-year arrangement, and that it executed the purchase order in reliance on Baxter's representation that it would enter into a five-year requirements contract. Flowoptic further states that it advised Baxter of this reliance. Baxter denies, however, that it indicated a willingness to enter into a five-year contract, and admits only that Mattenson indicated Baxter's willingness to discuss a long-term contract. Baxter further states that the 1993–94 purchase order was agreed to in October 1992.

In an exchange of letters between Wekstein and Mattenson in September 1993, Mattenson rejected Wekstein's statement that the parties had agreed at the July meeting that Baxter would enter into a five-year requirements contract with Flowoptic.

In October 1993, Flowoptic's counsel sent to Azel, of Baxter, a letter indicating that Flowoptic would not perform under the 1993–94 purchase order. Defendant characterizes this as a repudiation of the purchase order. Plaintiff maintains that performance was not due because Baxter repudiated the alleged Five–Year Contract.

## III

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976

F.2d 791, 794 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). A court may allow a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112 (1st Cir.1990).

"The moving party bears the initial burden of averring an absence of evidence to support the nonmoving party's case." *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir. 1992) (internal quotation marks and citations omitted). Once this burden has been met, "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would have the burden of proof at trial." *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1171 (1st Cir.1988). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party and 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *Wynne,* 976 F.2d at 794 (citations omitted).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists." *Griggs–Ryan,* 904 F.2d at 115. Rather, the party opposing summary judgment must set forth "hard evidence of a material factual dispute; the opposition cannot be conjectural or problematic but must have substance. Evidence which is merely colorable, or is not significantly probative will not preclude summary judgment." *Id.* (citations and internal quotation marks omitted).

## IV

### A. The Infringement Action

Hoppe contends that there are three classes of products manufactured and sold by Baxter that infringe the Hoppe patent. They are: (1) flowmeters assembled by Baxter using Hoppe jet rings authorized only for resale to Hoppe for use in flowmeters assembled by Hoppe and then sold to Baxter; (2) reconstructed flowmeters using unauthorized rotors manufactured by Baxter; and (3) flowmeters assembled by Baxter and sold since December 1993 using Baxter's jet ring containing eight passages.

Baxter responds as follows: (1) that Baxter had a legally implied license to use or sell the jet rings it purchased from Bearingless free of infringement claims; (2) that Baxter had a legal right as purchaser of the assembled flowmeters to repair and replace the component rotors because such components, unlike the assembled flowmeters, were unpatented; and (3) that the flowmeters assembled and sold by Baxter are not identical to or the equivalent of the flowmeters assembled by Hoppe because they contain eight jet passages only, rather than the nine or more jet passages covered by the Hoppe patent, and that Hoppe is barred by the doctrine of prosecution history estoppel from employing the doctrine of equivalents.

### 1. Flowmeters assembled by Baxter using Hoppe jet rings

Baxter purchased jet rings from a Hoppe company, Bearingless. Hoppe contends that Baxter was authorized, in effect, only to keep the rings in inventory for resale to the Hoppe company (initially Digital Precision, later Flowoptic) that assembled the complete flowmeters and sold them to Baxter for use in its dialysis machines. Baxter responds that it had an implied license to use or sell jet rings that it purchased from Hoppe free of any claim by Hoppe of patent infringement.

The parties agree that the jet rings themselves are not patented; it is, rather, the flowmeters that are patented. The issue is whether Hoppe, on sale of the jet rings to Baxter, granted Baxter an implied license to do as it pleased with the jet rings.

The authorized sale of an article which is capable of use only in practicing the patent is generally a relinquishment of the

patent monopoly with respect to the article sold. *United States v. Univis Lens Co.*, 316 U.S. 241, 249–51, 62 S.Ct. 1088, 1092–94, 86 L.Ed. 1408 (1942). The existence of an implied license is a question of law. *Met–Coil Systems Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir.1986). There are two requirements for the grant of an implied license by virtue of a sale · of nonpatented equipment used to practice a patented invention. First, the equipment involved must have no noninfringing uses. Second, the circumstances of sale must "plainly indicate that the grant of a license should be inferred." *Id.* at 686 (internal citations omitted).

■ The alleged infringer has the burden of showing the establishment of an implied license. *Id.* at 687. The alleged infringer makes a prima facie case when a patent owner sells without restriction a machine useful only in performing the claimed process and in producing the claimed product. *Id.* The burden of going forward then shifts to the party claiming infringement. *Id.*

■ The parties appear to dispute whether the jet rings have any use other than in the claimed bearingless flowmeter. I do not interpret *Met–Coil Systems* to mean that the burden is on defendant Baxter to submit evidence of the negative proposition that the jet rings have no use other than in the flowmeter. Plaintiff, moreover, has failed to produce any evidence, in the course of extensive briefing, that the jet rings have any use other than in the bearingless flowmeter.

It is also disputed whether the circumstances "plainly indicate that the grant of a license should be inferred."

Baxter argues that a letter from David Hoppe, in his capacity as President of Bearingless Flowmeter Company, gave Baxter express rights to use Bearingless components in all products assembled by Baxter. The letter, dated October 20, 1987, reads

According to our conversations Bearingless grants Baxter the right: to utilize genuine Bearingless components in their products, including assembly & replacement as re-

quired, such utilization extending in or for all Baxter products.

According to Baxter, this letter constitutes express authorization to use jet rings purchased from Hoppe for assembly of its own flowmeters, as well as for replacement parts in flowmeters originally purchased from Hoppe.

Hoppe suggests that the phrase in the above letter, "as required," must be interpreted to mean that he intended in that letter only to confirm Baxter's authority to perform field repairs using Hoppe components. Hoppe further maintains, in a sworn affidavit, that he "repeatedly and expressly advised Baxter that they were not authorized to use parts that I supplied for my patented flowmeter with parts that I did not approve and that they were not authorized to modify or reconstruct my flowmeters." Finally, Hoppe relies on a letter dated March 26, 1990, which reads as follows:

It is our understanding that no reprocessing or modification of Bearingless flowmeter parts may take place except by Bearingless. . . .

I conclude that the evidence presented by Hoppe is not sufficient to raise a genuine issue of material fact as to whether the circumstances of sale "plainly indicate that the grant of a license should be inferred." The 1987 letter is not reasonably subject to the interpretation placed on it by Hoppe because it plainly indicates that Baxter was expressly authorized to use Bearingless components for assembly as well as replacement. Hoppe points to no evidence that it subsequently sought to restrict Baxter's use of Bearingless components in assembly of Baxter flowmeters.

## 2. Reconstructed flowmeters using unauthorized rotors

■ Hoppe alleges that Baxter reconstructed, or authorized others to reconstruct, Hoppe flowmeters using a rotor that Baxter had designed for its own flowmeter, using proprietary information acquired improperly from Goss, Hoppe's former partner.

Baxter responds that its replacement of Hoppe rotors—which are not themselves pat-

ented—with Baxter rotors is not an infringement as a matter of law because the purchaser of a patented item is entitled to repair and replace unpatented spare parts for that item. It is true that "[m]ere replacement of individual unpatented parts ... is no more than the lawful right of the owner to repair his property." *Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.,* 365 U.S. 336, 346, 81 S.Ct. 599, 604, 5 L.Ed.2d 592 (1961). Hoppe has submitted no evidence that replacement of the rotor—which evidence submitted by Baxter shows to be a tiny component that wears out regularly and is replaced in minutes—constitutes a reconstruction. In fact, counsel for Hoppe admitted at oral argument that "we do not have at this time enough information to see whether there's really a reconstruction or not." This concession compels the conclusion that summary judgment for Baxter is warranted as to the claim of reconstruction.

### 3. Flowmeters assembled by Baxter and sold since December 1993 using Baxter's jet ring containing eight passages

Hoppe argues that Baxter's jet ring, which Baxter contends contains only eight jet passages, in fact contains "nine or more jet passages" and therefore infringes the Hoppe patent covering "nine or more jet passages."

Failure to meet a single claim limitation, literally or by a substantial equivalent, is sufficient to negate infringement of the claim. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389 (Fed.Cir.1992). Claim interpretation is a question of law amenable to summary judgment. *Id.* at 1387. The terms in a claim are given their ordinary meaning to one of skill in the art unless it appears from the patent and file history that the terms were used differently by the inventors. *Id.* The interpretation of a claim is based on the claim itself, the specification, and the prosecution history. *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1561 (Fed.Cir.1991).

The relevant limitation in this case is the requirement of "at least nine circumferentially spaced jet passages." The evidence submitted by Baxter, including drawings of its flowmeter, clearly establishes that the jet rings that Baxter has said it designed on its own contain only eight jet passages.

Hoppe admits that the Baxter jet rings contain only eight "routed channels," but contends that each channel can produce at least two streams of fluid per channel, providing for at least 16 fluid streams. Regardless whether Hoppe's contention is correct as a matter of physics, it is irrelevant because the patent claim refers to the number of *jet passages* rather than the number of *fluid streams* that might emerge from these passages. I conclude that "jet passages" refers to the holes in the ring, rather than the streams of fluid that pass through those holes. Accordingly, the Baxter flowmeters containing jet rings with eight passages do not literally infringe the '474 patent.

Hoppe argues that the Baxter flowmeters infringe the '474 patent under the doctrine of equivalents. It is the non-movant's burden on summary judgment to produce evidence of the equivalency of the function performed by the allegedly infringing item. *Intellicall, Inc.* 952 F.2d at 1389. I conclude that the Baxter flowmeter is not equivalent to the Hoppe flowmeter according to the Hoppe patent specification; furthermore, Hoppe is precluded from arguing equivalence by prosecution history.

In the specification to patent '474, Hoppe explained how varying the number of jets, as well as their size and length, proved "fruitless ... to obtain the requisite dynamic balance." Dynamic balance improves, the specification continues, only when the number of jets exceeds eight. I conclude that the term "jets," as it is used in the specification, refers to the jet passages within the ring rather than the streams of fluid. Thus, according to the specification of patent '474, a jet ring containing only eight passages is not equivalent in achieving dynamic stability to a jet ring containing more than eight passages.

I do not decide what weight, relative to the specification, independent evidence of functional equivalence would carry, because Hoppe's implicit argument of functional equivalence depends on substitution of the term "fluid stream" for "jet passage," which

I have already rejected as a misreading of the patent.

Thus, even if Hoppe were permitted to argue that the Baxter jet ring is equivalent to the Hoppe jet ring, he has failed to produce any evidence that would raise a question of fact—let alone compel a conclusion as a matter of law—concerning their equivalence. I conclude, however, as an alternative ground of decision, that Hoppe is estopped by the history of his prosecution of the patent from relying 'on the doctrine of equivalents.

■ Prosecution history estoppel limits a patentee's reliance on the doctrine of equivalents by preventing him from later contending in an infringement action that his claims should be interpreted as if limitations added by amendment were not present. *Townsend Engineering Co. v. HiTec Co.*, 829 F.2d 1086, 1090 (Fed.Cir.1987). The doctrine applies not just to claim amendments, but also to arguments made to obtain the patent. *Id.*

■ During prosecution of the '474 patent, Hoppe made statements that preclude him from now asserting that a flowmeter with eight jet passages is equivalent to a flowmeter with nine or more jet passages. In appeal of the Patent Examiner's rejection of an earlier application, Hoppe claimed

> Applicant has discovered no new structure over the prior art other than finding a larger number of jets than were previously employed solved the stability problem satisfactorily. This discovery is simply described in its general form in Claim 1 by the phrase "at least nine"....
>
>      *    *    *    *    *    *
>
> [A]pplicant's discovery [is] to the effect that a larger number of jets, and specifically a number in excess of eight jets would be required to obtain generally satisfactory rotor stability.

Hoppe appears to contend that the court should not consider the first statement because it was made in the context of an appeal of a 35 U.S.C. § 112 rejection rather than a rejection under 35 U.S.C. § 103. I do not find this distinction persuasive. The statement was made in the course of prosecution of the same patent. Moreover, the second statement is taken from Hoppe's appeal of a § 103 rejection and clearly states that a jet ring with nine or more jets is necessary to obtain satisfactory rotor stability. Thus, the second statement alone is sufficient to estop Hoppe from now arguing that a jet ring with only eight passages is equivalent to a ring with nine or more passages.

Hoppe insists that there remain substantial issues regarding the application of the doctrine of equivalents to this case. I conclude that none of his arguments is persuasive. In fact, it is thoroughly disingenuous for Hoppe to argue that there is a genuine issue of fact whether the Hoppe patent is a "pioneer patent" for which this court should recognize a broad range of equivalents, when the prosecution history contains unambiguous statements by Hoppe that his is only a "specific narrow improvement" and a "modification" of the McNabb patent.

Therefore, I conclude that there exists no genuine dispute of material fact as to whether the eight-passage jet ring of the flowmeter sold by Baxter since December 1993 infringes, literally or equivalently, the '474 patent. As a matter of law, it does not.

### B. The Contract Action

Defendant Baxter moves for summary judgment on the ground that plaintiff Flowoptic's claims are based on an oral contract that Flowoptic is precluded from enforcing under the Massachusetts Statute of Frauds, Mass.Gen.L. c. 259 § 1, and the Uniform Commercial Code Statute of Frauds, Mass. Gen.L. c. 106, § 2–201.

Hoppe admits that the parties never executed a written contract, but argues that Baxter is equitably estopped from asserting the Statute of Frauds as a defense.

■ The essential elements of estoppel are as follows:

(1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made.

(2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made.

(3) Detriment to such person as a consequence of the act or omission.

*Cellucci v. Sun Oil Co.,* 2 Mass.App.Ct. 722, 728, 320 N.E.2d 919 (1974), *aff'd* 368 Mass. 811, 331 N.E.2d 813 (1975).

There is a genuine dispute as to the first element—that is, as to whether agents of Baxter ever orally represented a willingness to enter into a five-year requirements contract.

■ I conclude, though, that Flowoptic has not met its burden of submitting evidence that would raise a genuine question as to whether Flowoptic reasonably relied to its detriment on the alleged oral representations by Baxter.

Flowoptic offers a litany of types of detriment it has allegedly suffered, as follows:

(1) weakening its negotiating position with Baxter;

(2) executing the 1992–93 purchase order and agreeing to terms it would otherwise not have agreed to;

(3) unknowingly providing Baxter an opportunity to stockpile Flowoptic parts toward the furtherance of Baxter's infringing activities;

(4) incurring legal expense in connection with the employment of various legal counsel in the context of negotiating in good faith and drafting a proposed agreement in 1992 and drafting an agreement to memorialize the terms of the March 1, 1993 agreement between the parties;

(5) maintaining employees on the Flowoptic payroll in reliance on Baxter representation that it would comply with the Five-Year contract;

(6) refraining from using another corporation (Zemtronics) as a supplier of harnesses;

(7) refraining from pursuing a possible supply contract with another corporation (COBE Laboratories).

■ Reliance on an oral representation can be detrimental where the relying party, at some cost to itself, has either taken some action as a result of the representation, or has refrained from taking action it otherwise would have taken.

*See, e.g., Frederick v. ConAgra, Inc.,* 713 F.Supp. 41 (D.Mass.1989) (employee moved family based on representation of employment);

*Cellucci, supra* (plaintiff broke off negotiations with defendant's competitor).

Flowoptic alleges that it refrained from entering into business relationships with two separate companies as a result of its reliance on Baxter's representations about its willingness to enter into a long-term requirements contract. First, it alleges that it continued to purchase harnesses (wiring that connects flowmeters to other machinery) from Baxter, despite having been quoted a lower price for harnesses by Zemtronics, only because it believed that Baxter had agreed to purchase all of its flowmeter requirements from Flowoptic. The mere receipt of a more favorable bid several months prior to the representation, without any suggestion that Flowoptic even entered into negotiations with Zemtronics on the basis of the bid, does not constitute a sufficiently definite business opportunity to support a claim of detriment. *Cf. Cellucci,* 320 N.E.2d at 924 (holding that plaintiff's breaking off negotiations with defendant's competitor was decisive of the case).

The same reasoning explains why Flowoptic's second allegation of a lost opportunity does not establish that there is a question of fact as to detriment. Flowoptic relies on a letter received in 1989 from a company interested in purchasing Hoppe bearingless flowmeters. No evidence is submitted, however, that the letter of interest blossomed into an actual business opportunity that continued to exist as of the purported representations by Baxter three years later.

Similarly, Flowoptic's assertions that it suffered detriment (1) from a weakening of its negotiating position with Baxter, (2) from execution of the 1992–93 purchase order, and (3) from maintaining employees on its payroll, are too vague and uninformative to create genuine disputes of material fact. Flowoptic does not explain how its negotiating position with Baxter was weakened or what it lost as a result of this weakening. Moreover, Flowoptic does not even suggest that its execution of the 1992–93 purchase order

was harmful. Finally, Flowoptic has not provided any basis for believing that maintaining employees on the Flowoptic payroll in reliance on Baxter's representation that it would enter a five-year contract was detrimental to Flowoptic.

Flowoptic further alleges that it suffered detriment when it entered the 1992–93 and 1993–94 purchase order agreements because it unknowingly provided Baxter an opportunity to stockpile Flowoptic parts during those periods, in furtherance of Baxter's infringing activities. Apparently, this is a reference to Hoppe's allegation, in his infringement suit, that Baxter stockpiled Flowoptic jet rings for infringing uses. I have already concluded that there is no genuine dispute regarding the scope of Baxter's authorization to use the jet rings, and that Baxter's use of the jet rings in assembly of its own flowmeters was not, on the evidence before the court, an infringing use. Thus, there is no ground for the claim of detriment.

 Finally, Flowoptic asks this court to break new legal ground by recognizing legal expenses inherent in negotiating and then drafting the alleged agreement for a five-year contract as a form of detriment sufficient to establish collateral estoppel. Were I to credit this view, however, the statute of frauds would become a mere paper tiger, for many cases of alleged oral promises involve attorneys' fees or some other transaction cost.

For the foregoing reasons, I conclude that Flowoptic cannot avoid through collateral estoppel the death blow dealt to its contract claim by the statute of frauds.

### C. The 93A Action

It is well established that breach of contract, without more, would not violate ch. 93A. *Chambers Steel Engraving Corp. v. Tambrands, Inc.*, 895 F.2d 858, 861 (1st Cir. 1990). Therefore, even if plaintiff Flowoptic were able to demonstrate that there is a genuine dispute regarding the existence of a contract or, alternatively, reasonable detrimental reliance on an oral representation, plaintiff would still not have a remedy under 93A.

## INTERLOCUTORY ORDER

For the foregoing reasons, it is hereby ORDERED:

Defendant's Motion for Summary Judgment against Flowoptic (Docket No. 8, C.A. No. 94–10509–REK) is allowed.

Defendant's Motion for Summary Judgment against Hoppe (Docket No. 8, C.A. No. 94–10323–REK) is allowed.

Defendant's Motion to Strike Supplemental Declaration of David Hoppe (Docket No. 42) is dismissed as moot.