**MET–COIL SYSTEMS CORPORATION, Plaintiff,**

v.

**KORNERS UNLIMITED, INC. and Ductmate Industries, Inc., Defendants.**

**Civ. A. No. 85–370.**

United States District Court, W.D. Pennsylvania.

Feb. 7, 1986.

Richard W. Hosking, Kirkpatrick & Lockhart, Pittsburgh, Pa., for plaintiff.

Stanley J. Price, Jr., John C. Brosky, Price & Adams, Ltd., Pittsburgh, Pa., for Korners.

Melvin L. Moser, Buchanan & Ingersoll, P.C., Pittsburgh, Pa., for Ductmate.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

Met-Coil Systems Corporation (Met-Coil) is the owner of a patent relating to a system or method of connecting sections of metal ducts. These ducts are normally used in buildings as part of the heating and air conditioning systems. Under Met-Coil's system the ends of the metal duct sections are bent to form integral flanges, specially shaped corner pieces are snapped in place and the sections then bolted together. According to Met-Coil's affidavit the essential parts of this system are the integral flanges and the special corner pieces.

Met-Coil, through a subsidiary and through a licensee,[1] manufactures and sells roll-forming machines. These machines bend the ends of the metal duct sections to form the integral flanges. Met-Coil does not actually form the ducts or form the integral flanges itself. Rather, it is the purchasers of Met-Coil's roll-forming machines who actually bend the metal to form the ducts and the integral flanges.

Met-Coil, through another subsidiary and through its licensee, also manufactures and sells special corner pieces for use with the integral flanges.

Korners Unlimited, Inc. (Korners) manufactures and sells corner pieces, which it refers to as "C" corners. "C" corners are specifically made for use with the Met-Coil integral flange and are sold only to purchasers of Met-Coil's roll-forming machines.

Met-Coil alleges Korner's manufacture and sale of "C" corners infringes its patent. Korners moves for summary judgment.

The elements of infringement are set forth in 35 U.S.C. § 271 which states the following:

271. INFRINGEMENT OF PATENT.

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the

---

1. For convenience reference is made to Met-Coil rather than its subsidiaries or its licensee.

term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Korners first contends it is not a direct infringer of Met-Coil's patented system of connecting sections of metal ducts. Although it opposes Korner's motion for summary judgment, Met-Coil does not assert that Korner's manufacture and sale of "C" corners directly infringes its patent.

■ Korners next contends it cannot be held liable for contributing to infringement or inducing infringement because there is no direct infringement. There can be no contributory infringement unless there is direct infringement. *Deepsouth Packing Co., Inc. v. Laitram Corp.,* 406 U.S. 518, 526, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273 reh. denied, 409 U.S. 902, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972). Similarly, there can be no inducement of infringement without direct infringement. 35 U.S.C. § 271(b). There is no direct infringement, Korners argues, because those to whom Korners sells its "C" corners are the purchasers of Met-Coil's roll-forming machines and, by selling the roll-forming machines, Met-Coil grants these purchasers an implied license to practice Met-Coil's patented duct connecting system.

Met-Coil, on the other hand, contends its sale of roll-forming machines does not confer an implied license to purchase "C" corners from Korners.

*United States v. Univis Lens Co.,* 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942) limits a patent owner's efforts to control his invention after the sale of an essential element. Univis owned a patent covering multifocal eyeglass lenses. Univis manufactured blank lenses and sold them to designated licensees. These licensees then ground and polished the blank lenses. The court stated:

But in any case it is plain that where the sale of the blank is by the patentee or his licensee—here the Lens Company—to a finisher, the only use to which it could be put and the only object of the sale is to enable the latter to grind and polish it for use as a lens by the prospective wearer. An incident to the purchase of any article, whether patented or unpatented, is the right to use and sell it, and upon familiar principles the authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold. Sale of a lens blank by the patentee or by his licensee is thus in itself both a complete transfer of ownership of the blank, which is within the protection of the patent law, and a license to practice the final stage of the patent procedure.

316 U.S. at 249, 62 S.Ct. at 1093 (citations omitted). The court went on:

[W]here one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patent, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article.

316 U.S. at 250–51, 62 S.Ct. at 1093–94.

*Medeco Security Locks, Inc. v. Lock Technology Corp.,* 199 U.S.P.Q. 519 (S.D. N.Y.1976) reaches the same result. Medeco manufactured and sold patented locks and patented keys. Medeco also manufactured and sold unpatented key blanks for use in making replacement keys. The defendant manufactured and sold kits to open Medeco's locks. The kits contained blank

keys which had been cut into parts and could be recombined to form a key.

Medeco charged that the defendant's recombined key infringed its patented key. The court considered whether the defendant had an implied license to practice the patent. The key blanks were purchased by the defendant from Medeco and could only be used with Medeco's lock. The court found Medeco's sale of the key blanks constituted the grant of an implied license to the purchaser to make the patented key.

Here Met-Coil sold roll-forming machines to bend the ends of the metal duct sections to form integral flanges. The integral flanges are an essential part of Met-Coil's patented duct connecting system. The integral flanges have no use other than in the practice of the duct connecting system. Based on *Univis* and *Medeco,* Met-Coil's sale of roll-forming machines is a license to its purchasers to practice the final stage of the patented system.

*Leeds & Catlin Co. v. Victor Talking Machine Co.,* 213 U.S. 325, 29 S.Ct. 503, 53 L.Ed. 816 (1909), relied upon by Met-Coil, is inapposite. Victor was the owner of a patent covering the combination of a phonograph record and a stylus. Leeds & Catlin manufactured and sold phonograph records. The court held Leeds & Catlin's records infringed Victor's patented "talking machine." The court held the purchase of records by owners of the talking machine was the impermissible reconstruction of the patented invention and not the permissible repair of the invention.

The question of whether the purchasers of the talking machine had an implied license was not expressly addressed by the court. Contrary to Met-Coil's suggestion that *Leeds & Catlin* rejects the concept of an implied license, *Leeds & Catlin* at most holds that any implied license granted to the purchasers of the talking machine extends to the repair of the invention, but not to its reconstruction. *See Andco Environmental Processes Inc. v. Niagra Environmental Associates, Inc.,* 206 U.S.P.Q. 656, 664 (W.D.N.Y.1980) (any implied license stemming from the sale of a patented system terminates when the system is reconstructed with infringer's components).

*Leeds & Catlin* sheds little light on the present case. *Leeds & Catlin* dealt with the sale of a completed article, a talking machine, and the purchasers' right to repair, but not reconstruct, it. The case presently before the court deals with Met-Coil's sale of a machine which makes integral flanges, one element of a duct connecting system. The teachings of *Leeds & Catlin* on the repair or reconstruction of a completed article are not relevant to the present sale of an uncompleted article. Rather, it is *Univis* and *Medeco* which dealt with the implied license to complete an uncompleted article and which must control the disposition of the present case.

It should be noted, however, that unlike *Univis* and *Medeco,* the practice of the final stage of Met-Coil's patented system requires not just "finishing" the element sold, i.e. forming the integral flanges, but also the purchase of an additional element of the patented system, i.e. the corner pieces. Met-Coil cites no authority which suggests that this difference takes the present case out of the rule of *Univis* and *Medeco. Leeds & Catlin* does limit the purchasers' right to purchase an element of a patented combination, but as explained above, *Leeds & Catlin* addresses the question in the context of a purchaser who already owns the completed invention.

 Because the purchasers of Met-Coil's roll-forming machines have an implied license to practice the patent and therefore are not direct infringers, Korners cannot be a contributory infringer or induce infringement. Accordingly the motion for summary judgment will be granted.

An appropriate order will be entered.