**MET–COIL SYSTEMS CORPORATION, Appellant,**

v.

**KORNERS UNLIMITED, INC. and Ductmate Industries, Inc., Appellees.**

**Appeal No. 86–999.**

United States Court of Appeals, Federal Circuit.

Oct. 8, 1986.

Clarence Fleming, McDougall, Hersh and Scott, Chicago, Ill., argued for appellant.

With him on the brief was James P. Ryther.

Melvin L. Moser, Jr., Buchanan Ingersoll P.C., Pittsburgh, Pa., argued for appellees. With him on the brief were George Rajnovich, Jr. and John M. Adams.

Before NIES, Circuit Judge, NICHOLS, Senior Circuit Judge, and ARCHER, Circuit Judge.

NIES, Circuit Judge.

The determinative issue in this appeal is whether a patent owner's unrestricted sale of a machine useful only in practicing the claimed inventions presumptively carries with it an implied license under the patent. The United States District Court for the Western District of Pennsylvania decided that legal issue in the affirmative.[1] We affirm.

### I.

Met-Coil Systems Corp. is the assignee of U.S. Patent No. 4,466,641, which claims an apparatus and method for connecting sections of metal ducts of the kind used in heating and air conditioning systems. Under the claimed inventions, the ends of the metal duct sections are bent to form integral flanges, specially shaped corner pieces are snapped in place, and the sections are bolted together.[2] Met-Coil makes and sells roll-forming machines that its customers use to bend integral flanges in the ends of metal ducts so as to practice the claimed inventions. Met-Coil also sells the specially shaped corner pieces for use with the integral flanges.[3] Korners Unlimited, Inc. makes corner pieces for use with Met-Coil's integral flanges and sells them to purchasers of Met-Coil's machines. Met-Coil sued Korners for inducing infringement of claims 1–12, 14–25 of its patent. Korners moved for summary judgment.

The basis of Korners' motion for summary judgment was that Met-Coil, by selling the roll-forming machine, granted an implied license under the patent to its customers. Because of that license, Korners contended, Met-Coil's customers cannot infringe the claims of the patent and, thus, Korners can neither induce infringement nor contributorily infringe. Met-Coil, on the other hand, contended that its sales of the machines do not confer an implied license under the patent upon its customers.

### II.

The district court recognized that "[t]he integral flanges are an essential part of Met-Coil's patented duct connecting system" and that the "flanges have no use other than in the practice of the duct connecting system." 628 F.Supp. at 133, 229 USPQ at 628. Applying the holding of *United States v. Univis Lens Co.*, 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408, 53 USPQ 404 (1942), to those facts, the court held that purchasers of Met-Coil's machines enjoyed an implied license under the patent.

In *Univis*, the patent covered multifocal eyeglass lenses, and the patent owner sold blank eyeglass lenses to its licensees. The Court held that the sale of the blanks carried a license to complete the lenses:

> But in any case it is plain that where the sale of the blank is by the patentee or his licensee—here the Lens Company—to a finisher, the only use to which it could be put and the only object of the sale is to enable the latter to grind and polish it for use as a lens by the prospective wearer. An incident to the purchase of any article, whether patented or un-

---

1. *Met-Coil Systems Corp. v. Korners Unlimited, Inc.*, 628 F.Supp. 130, 229 USPQ 627 (W.D. Penn.1986) (Teitelbaum, J.).

2. Although Met-Coil attempted to obtain claims directed to the corner pieces, it was unsuccessful. The corner pieces are unpatented.

3. Met-Coil's wholly-owned subsidiary, Lockformer Co., and its licensee, Engel Indus-

tries, Inc., manufacture and sell the roll-forming machines used to form the flanges in ducts. Another Met-Coil wholly-owned subsidiary, Iowa Precision Industries, Inc., manufactures and sells corner pieces for use in Met-Coil's claimed inventions. For convenience, we refer to Met-Coil rather than its subsidiaries or its licensee.

patented, is the right to use and sell it, and upon familiar principles the authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold. *Leitch Mfg. Co. v. Barber Co.*, 302 U.S. 458, 460–61 [58 S.Ct. 288, 289–90, 82 L.Ed. 371] [1938]; *B.B. Chemical Co. v. Ellis*, 314 U.S. 495 [62 S.Ct. 406, 86 L.Ed. 367] [1942]. Sale of a lens blank by the patentee or by his licensee is thus in itself both a complete transfer of ownership of the blank, which is within the protection of the patent law, and a license to practice the final stage of the patent procedure.

. . . .

... [W]here one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patented invention, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article. The reward he has demanded and received is for the article and the invention which it embodies and which his vendee is to practice upon it.

316 U.S. at 249–51, 62 S.Ct. at 1093, 53 USPQ at 407–08. The trial court recognized that *Univis* was factually distinct from the instant case, but found the distinction to be of no effect:

It should be noted, however, that unlike *Univis* . . . , the practice of the final stage of Met-Coil's patented system requires not just "finishing" the element sold, i.e. forming the integral flanges, but also the purchase of an additional element of the patented system, i.e. the corner pieces. Met-Coil cites no authority which suggests that this difference takes the present case out of the rule of *Univis*.

628 F.Supp. at 133, 229 USPQ at 629. Met-Coil appealed the district court's judgment of noninfringement to this court. 28 U.S.C. § 1295(a)(1) (1982).

### III.

On appeal, Met-Coil urges that the district court erred in relying on *Univis*. To support that proposition, Met-Coil cites *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 223 USPQ 982 (Fed.Cir. 1984). In that case, the owner of a patent claiming a method for retreading tires sued a retreader who had purchased retreading equipment from a former licensee of the patent owner. This court set out two requirements for the grant of an implied license by virtue of a sale of nonpatented equipment used to practice a patented invention. First, the equipment involved must have no noninfringing uses. *Id.* at 924, 223 USPQ at 998. In *Bandag*, the retreading equipment had noninfringing uses, so no license could be implied. To the contrary, Met-Coil's machines have no noninfringing use. Second, the circumstances of the sale must "plainly indicate that the grant of a license should be inferred." *Id.* at 925, 223 USPQ at 998, quoting *Hunt v. Armour & Co.*, 185 F.2d 722, 729, 88 USPQ 53, 58 (7th Cir.1950). The circumstances of the sale in *Bandag*, purchase of the equipment from the former licensee of the patent owner, did not plainly indicate that the grant of a license should be inferred.

■ Met-Coil contends that this case does not meet the two-part test set out in *Bandag*, that is, although the machines sold have no noninfringing use, the circumstances do not plainly indicate that the grant of a license should be inferred. In this connection Met-Coil introduced certain written notices to customers with respect to the purchase of corner pieces from unlicensed sources.[4] Met-Coil relies on cases holding that no implied license arises where the original sale was accompanied by an express notice negating the grant of an

---

4. Met-Coil's subsidiary Iowa Precision Industries, Inc. sent a letter to owners of Lockformer machines and distributors of Iowa Precision's corner pieces, notifying them that "as long as you are a customer of ours, you are automatically licensed to use the [claimed invention] insofar as your use involves forming rolls and corners purchased from us but not from other unauthorized sources."

implied license. *Radio Corp. of America v. Andrea,* 90 F.2d 612, 615, 34 USPQ 312, 314 (2d Cir.1937); *General Electric Co. v. Continental Lamp Works, Inc.,* 280 F. 846, 851 (2d Cir.1922). Those cases, however, are inapposite. Met-Coil does not assert that its customers were notified at the time of the sale of the machine. Rather, the customers were notified *after* they purchased the machine. The subsequent notices are not a part of the circumstances at the time of the sale, when the implied license would have arisen. After the fact notices are of no use in ascertaining the intent of Met-Coil and its customers at the time of the sales. *Cf. Dynamics Corp. v. United States,* 182 Ct.Cl. 62, 389 F.2d 424, 430 (1968) (after the fact correspondence irrelevant in determining intent of parties to contract).

Met-Coil urges that, even though it has not shown that the sales were accompanied by an express disclaimer of license, Korners has not met its burden of proof. As the alleged infringer, Korners has the burden of showing the establishment of an implied license. *Bandag,* 750 F.2d at 924, 223 USPQ at 998. We agree with the district court that Korners met that burden. A patent owner's unrestricted sales of a machine useful only in performing the claimed process and producing the claimed product "plainly indicate that the grant of a license should be inferred." Korners established a prima facie case, thereby shifting the burden of going forward to Met-Coil. Met-Coil offered nothing to carry its burden. Absent any circumstances tending to show the contrary, we see no error in the district court's holding that Met-Coil's customers enjoyed an implied license under the patent.[5]

The sole disputed issue decided by the trial court, the existence of an implied license, is a question of law. *See Bandag,* 750 F.2d at 926, 223 USPQ at 999 ("the conclusion of the district court that an im-

plied license of the Carver patent was extended to Bolser"); *AMP, Inc. v. United States,* 182 Ct.Cl. 86, 389 F.2d 448, 451 n. 3, 156 USPQ 647, 649 n. 3 (1968) ("the legal issue of implied license"). The parties raised no genuine issue of material fact. Because of our affirmance of the district court's holding that Met-Coil's customers enjoyed an implied license to practice the inventions claimed in Met-Coil's patent, there can be no direct infringement under the facts of this case. Absent direct infringement of the patent claims, there can be neither contributory infringement, *Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 884, 229 USPQ 814, 815 (Fed.Cir. 1986), nor inducement of infringement, *Stukenborg v. Teledyne, Inc.,* 441 F.2d 1069, 1072, 169 USPQ 584, 586 (9th Cir. 1971). Therefore, Korners was entitled to summary judgment of noninfringement as a matter of law. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

---

**5.** Because our review is limited to the case before us, we emphasize that this case does not involve sales accompanied by a notice expressly precluding the grant of a license under the patent. Nor do we express any opinion on the legality of requiring the com- bined purchase of a machine and corner pieces. Moreover, our affirmance of the district court's holding that Met-Coil's customers enjoy an implied license prevents us from reaching the arguments raised by Met-Coil as to why Korners' sales are infringing.