LIFESCAN, INC., a California corporation, Plaintiff,

v.

CAN–AM CARE CORP., a New York corporation, Defendant.

No. C–93–20430 JW.

United States District Court, N.D. California.

May 23, 1994.

---

**2.** One possibility is to invite counsel to submit written questions. *Ordonez*, 737 F.2d at 810.

David Eiseman, Bronson Bronson & McKinnon, San Francisco, CA, Barbara L. Mullin, Lynn A. Malinoski and Dianne B. Elderkin, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, PA, for Lifescan, Inc., a California Corp.

Joseph F. Jennings, Knobbe Martens Olson & Bear, Newport Beach, CA, for Can–Am Care Corp., a New York Corp.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT*

WARE, District Judge.

On April 29, 1994, the Court held a hearing regarding Defendant's motions for summary judgment. Based upon all pleadings filed to date, as well as on the oral argument of counsel, the Court orders as follows.

## I. BACKGROUND

Plaintiff Lifescan, Inc. ("Lifescan") is in the business of manufacturing and selling One Touch Brand blood glucose meters for home use by persons with diabetes. In order to use the meter, the patient must insert a one-time usable strip into the meter, apply a drop of blood onto the strip and place the strip in the meter. The meter then "reads" the strip and determines the patient's blood glucose level.

Lifescan markets and sells both the meters and the test strips. Lifescan has obtained United States Patent Nos. 4,935,346[1] and 5,049,487[2], in June of 1990 and September of 1991, respectively. Both patents specify methods of using the blood glucose meters.

Lifescan first introduced its meters in 1987. The packaging on Lifescan's meters between 1987 and 1992 did not contain any reference to either of Lifescan's patents. In October of 1992, Lifescan began marking the applicable patent numbers on both its boxes of meters and strips. In April of 1993, Lifescan also began placing a sticker on the outside of its meter boxes which stated:

Contents covered by one or more of the following U.S. patents: 4,976,724, 5,059,394 and Des. 318,331. CAUTION: Use of the monitoring device contained herein is protected under U.S.Pat. Nos. 4,935,346 and 5,049,487. Purchase of the device does not give a license to practice these patents.

---

1. The '346 Patent relates to the use of no-wipe blood glucose test strips wherein a small amount of blood is applied to one side of a strip containing chemical indicators and the amount of glucose in that blood is determined by making a reflectance measurement on the other side of that strip.

2. The '487 Patent relates to the use of a blood glucose strip in which a measurement is made after a predetermined interval after detecting the presence of blood, without having determined the time at which the blood sample was initially applied to the strip and eliminating the need to wipe blood from the test strip.

Such a license is automatically granted when the device is used with the enclosed, or separately purchased ONE TOUCH test strips. No other test strip supplier is authorized to grant such a license. Other patents pending.

In June of 1993, Can–Am began selling its Quick Check One test strips, designed for use in Lifescan's meters. Lifescan immediately filed a complaint against Defendant Can–Am Care Corporation ("Can–Am") arising from Can–Am's manufacture and sale of blood glucose test strips. In September of 1993, the Court heard and denied Life Scan's motion for entry of a preliminary injunction which sought to prohibit Can–Am from continuing to sell its test strips.

Lifescan's complaint alleges that, through the manufacture and sale of its test strips, Can–Am infringes Lifescan's patents, both directly and by inducing infringement, and engages in false advertising and unfair competition. Can–Am denies the allegations and has filed a cross-complaint alleging that Lifescan engages in anti-competitive conduct through its marketing of both the meters and the test strips.

Can–Am has filed three separate motions for partial summary judgment, each of which relates to the issue of whether Lifescan granted an unrestricted, implied license to all users of its meters such that the meters may be used in conjunction with any test strip and that such use would not be found to constitute an infringement of Lifescan's patents. Each of these motions is addressed separately below.

## II. LEGAL STANDARDS

■ In addressing Can–Am's motions for summary judgment, the court proceeds pursuant to the mandates of Rule 56(c) of the Federal Rules of Civil Procedure, which provide that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The purpose of summary judgment is to avoid a trial where there is no genuine factual issue and the moving party is entitled to judgment as a matter of law. *Bloom v. General Truck Drivers, Office, Food & Warehouse Union,* 783 F.2d 1356, 1358 (9th Cir.1986). Applying these standards, the Court finds as follows.

## III. DISCUSSION

### A. Metcoil Motion

■ Can–Am has filed a motion for partial summary judgment of noninfringement under *Met–Coil* in which it seeks a ruling that, as a matter of law, all end users who purchased meters without a license restriction sticker obtained an unrestricted license under the method patents to use the meters for their intended purpose. In *Met–Coil Systems Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684 (Fed.Cir.1986), the Federal Circuit held that a patent owner's unrestricted sale of an item useful only in practicing the claimed invention presumptively carries with it an implied license under the patent. The Federal Circuit stated two requirements for the grant of an implied license by virtue of the sale of equipment used to practice a patented method. First, the equipment involved must have no non-infringing uses. Second, the circumstances at the time of sale must "plainly indicate that the grant of a license should be inferred." *Met–Coil,* at 686. With respect to the second requirement, the Court held: "A patent owner's unrestricted sales of a machine useful only in performing the claimed process and producing the claimed product 'plainly indicates that the grant of a license should be inferred.'" *id.* at 687.

In this action, Lifescan contends that "it is aware of non-infringing uses for the One Touch Meters" and that factual issues exist regarding the second requirement of *Met–Coil.* However, a review of the evidence presented to the Court to date indicates that Lifescan has failed to present evidence which creates a triable issue of material fact regarding the *Met–Coil* requirements. No evidence has been presented which would indicate that the Lifescan meters have non-infringing uses. Nor has any evidence been presented which indicates that Lifescan's sales of its meters were somehow restricted

prior to its packaging warnings beginning in mid–1993. Accordingly, the Court hereby GRANTS Can–Am's motion for partial summary judgment and rules that, as a matter of law, all end users who purchased One Touch meters without the license restriction sticker obtained an unrestricted license under the method patents to use the meters for their intended purpose.

### B. Ineffective License Restriction

█ Can–Am's second motion for partial summary judgment seeks a ruling that, as a matter of law, the license restriction sticker placed by Lifescan on its meters beginning in mid–1993 is ineffective to restrict the rights of end users who purchased such meters to use the meters for their intended purpose. Can–Am maintains that such stickers are legally ineffective attempts to create an adhesion contract and fail to reasonably inform the end users as to the terms of an effective license agreement. Can–Am also asserts that the "Warranty of Title and Against Infringement", arising under U.C.C. Section 2–312, protects third party purchasers from infringement claims.

Lifescan contends that triable issues of fact exist regarding the effectiveness of its stickers. Lifescan also contends that U.C.C. Section 2–312 is inapplicable to the conduct of the end-users, pursuant to *Motorola, Inc. v. Varo, Inc.*, 656 F.Supp. 716, 717–18 (N.D.Texas 1986).

Based upon a review of all pleadings and evidence presented to date, the Court finds that triable issues of fact exist with respect to the effectiveness of its license restriction sticker. Accordingly, the Court hereby DE-NIES Can–Am's motion for partial summary judgment and rules that it cannot determine that, as a matter of law, the license restriction sticker is ineffective to restrict the rights of end users who purchased meters with the license restriction sticker to use the meters for their intended purpose.

### C. Induced Infringement

█ Finally, Can–Am moves for partial summary judgment as to Lifescan's allegation that Can–Am induces infringement through the sale of its test strips. Specifically, Can–Am moves for a ruling that it does not induce infringement as a result of the warning contained on Can–Am's strip's boxes, which advises consumers NOT to purchase Can–Am's strips if they own a Lifescan meter which contains the license sticker warning. As a result of the pendency of this litigation, Can–Am has specifically informed customers not to use Can–Am strips in One Touch meters that were purchased with the Lifescan restriction sticker. Can–Am has begun applying the following warning to its test strips packages:

> **CAUTION:** The packaging of some Lifescan ONE TOUCH meters sold after or about July 1993 contains a NOTICE that the use of any test strip other than ONE TOUCH test strips on **that meter** is in violation of U.S. Patent Nos. 4,935,346 and 5,049,487. Due to the patent infringement issues alleged by Lifescan, **the test strips in this box should not be used in those meters which contain that notice** until this legal matter is settled in the courts. See, Physical Exhibit 197.

█ In this action, it is only the end-users who use the strips in Lifescan's meters who could possibly directly infringe Lifescan's patented methods. Can–Am's sale of the strips does not directly infringe the patented methods. However, a person induces infringement of a patent by "actively and knowingly aiding and abetting another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir.1988). Actual "intent to cause the acts which constitute the infringement is a necessary prerequisite to finding inducement." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990).

Based upon its warning sticker, Can–Am contends that it cannot be found to have intended to cause infringement. Therefore, Can–Am seeks summary judgment that the sale of its strips does not constitute inducement of patent infringement by purchasers of meters with a Lifescan sticker.

Lifescan contends that Can–Am is not entitled to summary judgment on this issue because its warning label is insufficient as a matter of law to insulate it from liability for inducing infringement and that there is a

genuine issue of material fact as to whether Can–Am's warning is effective in preventing owners of stickered ONE TOUCH meters from using Can–Am's test strips in an infringing manner. The Court agrees. The evidence presented to date shows that there is a triable issue of material fact as to the actual effectiveness of Can–Am's label. The fact that Can–Am provides the warning to consumers does not equate with the fact that the consumers, in fact, understand and heed the warning. Therefore, the Court cannot conclude that, as a matter of law, Can–Am could not be found to have contributorily induced infringement.

## IV. CONCLUSION

Based upon the foregoing, the Court hereby GRANTS Can–Am's motion for summary judgment under *Met–Coil* and hereby DENIES Can–Am's remaining motions.

IT IS SO ORDERED.