61 F.3d 919
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Robert J. HERSCHLER, Plaintiff-Appellant,
v.
GATEWAY PRODUCTS, INC., Gateway Stable Supply and Arthur
(Ted) Simon, Defendants/Cross-Appellants.
 Nos. 94-1118, 94-1131.
 United States Court of Appeals, Federal Circuit.
 July 14, 1995.
Rehearing Denied; In Banc Suggestion Declined Oct. 13, 1995.
 
 Before NIES, MICHEL, and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert J. Herschler appeals from the judgment of the United States District Court for the District of Colorado ordering cancellation of United States Trademark Registration No. 1,289,639 covering MSM for methylsulfonylmethane for use in cosmetics and food supplements and awarding no damages for infringement by Gateway Products et al. (Gateway) of two patents owned by Herschler.[1] An injunction was entered against Gateway's inducing or contributing to infringement of the patents. Gateway cross-appeals the denial of its renewed motion for a Judgment as a Matter of Law (JMOL) that, inter alia, the patents were not infringed and seeks relief from the injunction.
 
 I.
 
 2
 We have fully considered Herschler's argument seeking to set aside the cancellation of his registration for the asserted mark MSM for methylsulfonylmethane used in cosmetics and food supplements. However, we discern no error in the district court's rulings that the evidence was conclusive of genericness and that the registration was procured by fraud. The mark had been used as a generic shorthand acronym for the compound prior to registration. The district court found Herschler's statements during prosecution of the trademark application that MSM had no generic significance in the trade were false and were made with intent to deceive the trademark examiner. The district court's judgment on this issue is correct as a matter of law.
 
 II.
 
 3
 Herschler charged Gateway with inducing infringement of two patents, No. 4,616,039 and No. 4,863,748. The '039 patent claims a method of supplying methylsulfonylmethane (hereinafter MSM) as a source of metabolizable sulfur to animals with a sulfur deficiency. The '748 patent claims a method of preparing a foodstuff with MSM and also claims a processed foodstuff refortified with MSM.
 
 
 4
 At trial, the jury returned special verdicts that Gateway induced infringement of both "patents" without being required to specify which claims were infringed. Subsequently, Gateway timely renewed its motion for JMOL asserting, inter alia, noninfringement--either direct or induced--of any claims. Before ruling on the JMOL motion, the district court conducted a bench trial on the issue of damages, following which the district court entered its findings and conclusions on both damages and the pending JMOL motion. In sum, the district court entered judgment for the patentee but gave relief only in the form of an injunction. Each party appeals the adverse rulings on the patent infringement claims.
 
 
 5
 The district court's opinion is not a model of clarity. In his opening brief, Herschler attacks the district court's ruling of no damages on the ground that the district court erred in setting aside the jury verdicts of infringement. On the other hand, Gateway argues that the district court upheld the verdicts based on infringement of at least one claim of each patent. In his reply brief, Herschler takes a different tack, arguing that the district court overturned no finding of infringement of any claims.
 
 
 6
 Absent a judgment of infringement, no basis would exist for the district court's entry of an injunction. We read the opinion to hold that the jury verdict is supportable respecting induced infringement of claim 1 of the '039 patent and claim 1 of the '748 patent, although the latter is less clear. The district court further explained that there was "a great difference between the jury's generalized finding and the proof required for damages." The district court reasoned that although the jury could credit the "generalized" testimony to find at least a single instance of infringement, that generalized testimony could not support a damages award. Respecting other claims, while the district court ruled that there was a lack of evidence of infringement of claim 5 of the '039 patent and, at least, claim 8 of the '748 patent, the district court found it unnecessary to vacate the jury's special verdicts because the district court awarded no damages. This was error. If Gateway does not infringe, no injunction should have been issued. Accordingly, we turn to the merits of Gateway's JMOL motion.
 
 A. Standard of Review
 
 7
 To overturn a jury verdict, the party moving for JMOL must show either of the following:
 
 
 8
 1. Sufficient evidence does not exist from which a reasonable jury could return a verdict for the nonmoving party.
 
 
 9
 2. Under the correct governing law, there could be but one reasonable conclusion as to the verdict.
 
 
 10
 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986); Markman v. Westview Instruments, Inc., 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (in banc ); Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). "On appeal, we review de novo the correctness of the district court's grant [or denial] of JMOL by reapplying the JMOL standard." Markman, 52 F.3d at 975, 34 USPQ2d at 1326.
 
 
 11
 To prove inducement to infringe, a patentee must first prove a direct infringement. Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687, 231 USPQ 474, 477 (Fed.Cir.1986). "In general, a finding of infringement depends on whether the accused device [or method] falls within the scope of the asserted claims." Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 758, 221 USPQ 473, 477 (Fed.Cir.1984). The burden of proof for infringement lies with the patentee. Id.; SSIH Equip. S.A. v. ITC, 718 F.2d 365, 375, 218 USPQ 678, 688 (Fed.Cir.1983). After first proving a direct infringement, a patentee, to show inducement, must also prove that the alleged inducing infringer "intend[ed] to cause the acts which constitute the infringement." Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469, 15 USPQ2d 1525, 1529 (Fed.Cir.1990).
 
 B. Claim 1 of the '039 Patent
 
 12
 Infringement of claim 1 requires use of the method in animals with a sulfur deficiency.[2] Gateway argues that there is no evidence in the record that any horse fed Gateway's MSM was deficient in sulfur and, therefore, no direct infringement was proved. Herschler admitted that he never tested a horse to see if it was deficient in sulfur before or after being fed Gateway's MSM and further admits that the sulfur requirements of horses had not been established in the scientific community. Herschler merely argues that all horses are deficient in sulfur at some time during a given day, relying on statements in the '039 patent specification.[3] At the close of oral argument, this court asked Herschler to show where in the record evidence was provided that horses in general are sulfur deficient. Post oral argument, Herschler submitted a letter to answer this request. In that letter, Herschler again referred this court only to the patent specification. Herschler believes that Gateway must disprove statements in the specification to show noninfringement because of the presumption of patent validity.
 
 
 13
 Relying on the presumption of validity to prove infringement highlights Herschler's failure of proof. While Herschler correctly notes that a patent carries a presumption of validity, the presumption is a procedural device. Avia Group Int'l, Inc. v. L.A. Gear, Inc., 853 F.2d 1557, 1562, 7 USPQ2d 1548, 1552 (Fed.Cir.1988). The patent specification is no substitute for evidence of infringing acts by customers of Gateway. Herschler fails to point out any evidence in the record supporting an implied finding or reasonable inference that any horse fed Gateway's product had a sulfur deficiency as is necessary to prove direct infringement. Proof of inducement is equally defective. Herschler argues that the directions on the Gateway product encourage use of the method disclosed in the claim. However, the Gateway directions do not state that MSM should be fed to horses deficient in sulfur. The directions recommend use of MSM for horses where additional sulfur is "desired." In sum, the directions on Gateway's product do not cover all the claim limitations, which is necessary for a finding of inducement. Thus, no inducement was proved.[4]
 
 
 14
 Without any evidence in the record to support a jury finding of either direct or induced infringement of claim 1, the district court erred in denying the JMOL motion.[5]
 
 C. Claim 5 of the '039 Patent
 
 15
 Herschler agrees that feeding MSM to animals with a "body level" of sulfur in excess of one part per million (ppm) does not infringe claim 5.[6] As with claim 1, Herschler never tested any animal's body level of MSM, nor did he test any horse fed with Gateway MSM. On direct examination, Herschler testified that "body level" meant "how much [MSM] is there in a whole animal standing there, alive or dead."
 
 
 16
 It is irrelevant whether or not the only method of determining "body level" of MSM was to sacrifice the animal and determine the proportion of MSM in the entire body. Herschler offered no evidence that any animal fed with Gateway's product had a "body level" less than 1 ppm before feeding or that feeding the animal raised its "body level" above 1 ppm as the claim requires. Herschler used the term "body level" in this claim and must live with that choice of terminology. Because there was no evidence regarding "body levels" as required by the claim, the district court ruling of no infringement of independent claim 5 of the '039 patent is sustained.[7]
 
 D. The '748 Patent
 
 17
 Claim 1 is a method of refortifying a foodstuff with MSM.[8] Claim 8 claims a refortified foodstuff product.[9] Gateway's arguments on these claims are that there is no evidence that anyone processed, much less Gateway induced anyone to process, a foodstuff to reduce the concentration of MSM below 0.1 ppm by drying as taught by the claim and then to refortify it with a specific amount of MSM. The district court stated, "The only proof in the record is the generalized speculation that the drying of hay and grains reduced the content [of MSM] in the required amount." The district court found that this evidence was insufficient for damages and we conclude that the same lack of evidence defeats a claim of inducement to infringe claim 8. Herschler's reliance on a Gateway salesman's statement that he saw a customer mix Gateway's product with hay is misplaced. This testimony does not constitute any, much less substantial, evidence of inducement.
 
 
 18
 Herschler states that one of his experts testified that Gateway's labels direct a person to use the amounts specified in the claims. The testimony to which Herschler refers this court does not support Herschler's statement. When the expert was specifically asked whether the amount of MSM recited in the label directions would infringe the claim, the expert did not give an answer. Instead he indicated that he would need some time to calculate the numbers and give a response. Herschler's counsel did not await a response, but chose to move on to another question. Herschler also argues that Gateway instructed its customers to mix its MSM with dried grain and that shows inducement. To agree with Herschler, we would have to ignore the claim limitations and hold that merely mixing any amount of MSM with any type of horse feed, whether or not so dried, infringed the claim. However, the claims contain specific limitations which Herschler is unable to show were met by Gateway's directions.
 
 
 19
 In its brief, Herschler attempts to interject an issue of direct infringement by Gateway. Recognizing that the issue was not tried, he states this arguments involves only "a simple matter to amend the pleadings." Clearly not. An appellate court is not the forum for interjecting new issues. Bruan Inc. v. Dynamics Corp., 975 F.2d 815, 821 (Fed.Cir.1992).
 
 
 20
 The district court erred in denying the motion for JMOL of noninfringement of the '748 patent.
 
 CONCLUSION
 
 21
 Because substantial evidence does not support a finding of direct or induced infringement of any asserted claim in the '039 patent or the '748 patent, we reverse the denial of Gateway's motion for JMOL of noninfringement and vacate the injunction. Herschler's appeal regarding damages is mooted. Cancellation of the trademark registration is affirmed.
 
 COSTS
 
 22
 Each party to bear its own costs.
 
 
 
 [1]
 Herschler v. Gateway Products, Inc., No. 90-M-34 (D.Colo. Nov. 16, 1993)
 
 
 [2]
 Claim 1 states (emphasis added):
 A method of providing a source of metabolizable sulfur to an animal whose diet comprises sufficient processed food to render the animal's diet deficient in metabolizable sulfur, which comprises physically admixing with one or more of the foodstuffs ingested daily by the animal, prior to the ingestion thereof by the animal, an amount of methylsulfonylmethane equivalent to at least 0.01 mg/kg of body weight.
 
 
 [3]
 Herschler's argument is disjointed and difficult to find since his brief contains few direct citations to the record to show that the jury was presented with evidence that the accused method falls within the scope of the claims
 
 
 [4]
 Contributory infringement cannot be found because Gateway's MSM product is a staple article of commerce. 35 U.S.C. Sec. 271(c) (1988)
 
 
 [5]
 Claims 2 and 4 depend on Claim 1. The dependent claims cannot be infringed without infringement of the independent claims
 
 
 [6]
 Claim 5 states (emphasis added):
 A method of improving the overall state of health and resistance to disease of an animal maintained on a diet which supplies naturally occurring methylsulfonylmethane in amounts insufficient to maintain body levels thereof in the animal of at least 1 ppm, which comprises administering orally thereto and thereby adding to the diet of the animal an amount of methylsulfonylmethane effective to maintain these body levels at least 1 ppm.
 
 
 [7]
 Dependent claims 7, 8, 9 and 11 are therefore also not infringed
 
 
 [8]
 Claim 1 states (emphasis added):
 A method of processing a foodstuff which comprises the steps of:
 reducing the moisture content of the foodstuff by heating or drying said heating or drying reducing any naturally occurring methylsulfonylmethane present there in to a level less than about 0.1 ppm and;
 admixing with the foodstuff after said heating or drying step an amount of methylsulfonylmethane effective to raise the concentration thereof in the foodstuff to at least about one ppm.
 
 
 [9]
 Claim 8 states:
 A cooked and/or dried processed foodstuff which after having been cooked and/or dried contains less than 0.1 ppm of naturally occurring methylsulfonylmethane comprising in physical admixture therewith from about 15 X 10-4% [.0015%] to 3% exogenous methylsulfonylmethane.