99 F.3d 1160
 42 U.S.P.Q.2d 1555
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
ELKAY MANUFACTURING COMPANY, Plaintiff-Appellant,
v.
EBCO MANUFACTURING COMPANY, Defendant-Appellee.
 No. 94-1424.
 United States Court of Appeals, Federal Circuit.
 Oct. 29, 1996.
 
 Before ARCHER, Chief Judge, MAYER, and RADER, Circuit Judges.
 ARCHER, Chief Judge.
 
 
 1
 Elkay Manufacturing Company (Elkay) sued Ebco Manufacturing Company (Ebco) for contributory infringement of, or inducement to infringe, U.S. Patent No. 5,121,778 (the '778 patent) in the United States District Court for the Northern District of Illinois. The district court granted summary judgment in favor of Ebco. Elkay Mfg. Co. v. Ebco Mfg. Co., No. 92-C-2487 (N.D.Ill. Mar. 9, 1993) (Judgment). We reverse and remand.
 
 BACKGROUND
 
 2
 Claim 1, the only independent claim of the '778 patent, discloses a hygienic liquid dispensing system comprising the combination of a mounting means, a feed tube, a bottle cap with a frangible connection, and an arrangement for housing these elements. Three years before the issuance of the '778 patent, Elkay granted an exclusive license to Blackhawk Molding Co. (Blackhawk) for the manufacture, use, and sale of the frangible bottle cap. Blackhawk markets this frangible cap for use with drinking water bottles that are placed into a water dispensing system. Elkay manufactures and sells one such liquid dispensing unit into which the frangible cap can be placed to complete the combination to practice the patented invention.
 
 
 3
 Ebco also makes and sells a liquid dispensing unit that works with the frangible cap made and sold by Blackhawk. Elkay contends that the Ebco unit in combination with the frangible cap sold by Blackhawk practices the invention claimed in the '778 patent.
 
 
 4
 Elkay filed a patent infringement suit against Ebco, alleging contributory infringement and inducement to infringe. Although Elkay alleges that the customers of Blackhawk, mainly distributors of bottled water, directly infringe the '778 patent with the Ebco unit, Elkay only sued Ebco. When Ebco moved for summary judgment of noninfringement, the case was referred to a magistrate judge. The magistrate concluded that summary judgment was inappropriate because the infringement allegations involved unresolved factual issues.
 
 
 5
 The district court rejected the magistrate's recommendation and granted Ebco's motion on the grounds that Blackhawk's customers did not infringe and that the absence of direct infringement precluded a finding that Ebco contributed to or induced infringement. The district court held, under the authority of United States v. Univis Lens Co., 316 U.S. 214 (1942), that the sale of the frangible caps by Elkay's licensee included an implied license to use the caps for their intended purpose, namely, to practice the '778 invention. Because Elkay had licensed this element of the invention, the district court concluded that Elkay had surrendered its right to enforce the patent against Blackhawk's customers. Elkay Mfg. Co. v. Ebco Mfg. Co., No. 92-C-2487 (N.D.Ill. Mar. 9, 1993) (Memorandum Opinion and Order).
 
 
 6
 Elkay then filed a motion for new trial under Fed.R.Civ.P. 59(a). In denying the motion, the district court considered Elkay's arguments that the sale of frangible caps by Blackhawk did not create an implied license to practice the invention of the '778 patent because the frangible caps had a noninfringing use and because the circumstances of sale did not plainly indicate that the grant of a license should be inferred. See Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 231 USPQ 474 (Fed.Cir.1984). The district court nevertheless reaffirmed its decision. It concluded that there were no noninfringing uses for the frangible caps and that Elkay had not attempted to restrict the use of the caps in a timely manner. The district court therefore held that a license arose by implication for the customers of Blackhawk to use the frangible caps in the patented combination. Elkay Mfg. Co. v. Ebco Mfg. Co., No. 92-C-2487 (N.D.Ill. Aug. 12, 1993) (Memorandum Opinion and Order).
 
 
 7
 Elkay now appeals.
 
 DISCUSSION
 I.
 
 8
 A district court's decision to grant summary judgment is reviewed de novo, Meyers v. Asics Corp., 974 F.2d 1304, 1306, 24 USPQ2d 1036, 1037 (Fed.Cir.1992), to ascertain whether the court correctly determined that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1537, 20 USPQ2d 1456, 1458 (Fed.Cir.1991). If a genuine issue of material fact exists, then summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 II.
 
 9
 The question of whether Ebco contributorily infringed or induced infringement of the '778 patent, 35 U.S.C. § 271(b), (c) (1994), turns on whether there was any direct infringement of the patent. See Met-Coil, 803 F.2d at 687, 231 USPQ at 477 ("Absent direct infringement of the patent claims there can be neither contributory infringement, nor inducement of infringement.") (citations omitted). The answer to the direct infringement question depends on whether Blackhawk's customers obtained an implied license to practice the invention of the '778 patent when they purchased frangible caps. The burden of proof is on the alleged infringer, Ebco, to establish the existence of an implied license. Id. at 687, 231 USPQ at 476; Bandag, 750 F.2d at 924, 223 USPQ at 998.
 
 
 10
 Two requirements must be satisfied to establish an implied license. Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 878, 37 USPQ2d 1169, 1172 (Fed.Cir.1995). First, the product sold by the patentee or its licensee "must have no noninfringing uses." Met-Coil, 803 F.2d at 686, 231 USPQ at 476. Second, the circumstances of sale must "plainly indicate that the grant of an implied license should be inferred." Id. at 686, 231 USPQ at 476 (quoting Bandag, 750 F.2d at 924, 223 USPQ at 998 (quoting Hunt v. Armour & Co., 185 F.2d 722, 729, 88 USPQ 53, 58 (7th Cir.1950))).
 
 
 11
 Under the first requirement, the alleged infringer must show that the article at issue has no noninfringing uses, that is, that there is no other use for the article than in the patented invention. See Univis Lens, 316 U.S. at 249 ("[T]he authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold.") (emphasis added); Met-Coil, 803 F.2d at 687, 231 USPQ at 476 ("A patent owner's unrestricted sales of a machine useful only in performing the claimed process and producing the claimed product 'plainly indicate that the grant of a license should be inferred.' ") (emphasis added); see generally 4 Donald S. Chisum, Patents § 16.033 at 16-93 (1995) ("[W]here a person purchases from the patent owner (or his assignee or licensee) a product or element useful in the practice of a patented combination or process ... a license will be implied if the element or product has no practical use except in the combination or process."). This requirement places a heavy burden on the accused infringer because a noninfringing use may be broadly understood and need only be reasonable or practical. See Bandag, 750 F.2d at 925, 223 USPQ2d at 998 (considering resale, modification, and idle time as reasonable noninfringing uses); see also General Elec. Co. v. Continental Lamp Works, Inc., 280 F.2d 846, 851 (2d Cir.1922) (considering whether an element of a patented combination has no practical use other than in the practice of the invention).
 
 
 12
 Elkay argues that this first requirement was not satisfied because there was evidence of a noninfringing use for the frangible cap. Accordingly, Elkay contends that the district court erred by granting summary judgment because the question of whether there was a noninfringing use presented a genuine issue of material fact. Specifically, Elkay argues that the frangible cap sold by Blackhawk is useable "as a cap" to seal water bottles during transport and storage and contends that this should be considered a noninfringing use. The district court characterized this use as a "non-use" because the frangible cap would have to be removed and thrown away when the bottled water is inserted into a conventional liquid dispensing system. Elkay asserts, however, that the district court misinterpreted its argument.
 
 
 13
 Elkay explains that the use of the frangible cap for transport and storage constitutes a noninfringing use separate from the use of the cap in a liquid dispensing system. While, as the district court points out, the cap must ultimately be discarded before it is used in a conventional system, Elkay emphasizes that the frangible cap also serves a separate and distinct purpose for use as a water cap during storage and transport. Elkay notes that this storage and transportation use is of particular importance to bottlers of water when customers are in transition from conventional liquid dispensing systems to the patented system. Indeed, Elkay points out that the trade literature even emphasized the advantage of this particular use: "[T]he ... [c]ap can be used with [a] conventional or [the patented] System[ ] while you're integrating your phase-in program."
 
 
 14
 Moreover, to counter the district court's argument that use of the frangible cap in a conventional system is a "non-use," Elkay points out that when the frangible cap is used in a conventional system, it operates in exactly the same manner as a conventional water bottle cap--it seals and retains water during transport and storage. To show that Blackhawk intended its customers to be able to use its cap in a conventional system as well as the patented system, Elkay asserts that Blackhawk's cap has a tab extending from the cap skirt and a line of weakness to allow easy removal of the cap by grasping the tab and tearing along the line of weakness.[1] Thus, Elkay argues that the frangible cap is not only usable in the patented system; rather, it may be used in a conventional system and in transportation and storage.
 
 
 15
 Ebco does not try to refute Elkay's argument of noninfringing use. Apparently, Ebco either misinterprets Elkay's argument, as Elkay contends the district court did, or simply refuses to acknowledge the argument. Ebco only responds with the same reasoning as in the district court's opinion which is that this alleged use of the frangible cap in a conventional liquid dispensing system is a "non-use" because the cap must be discarded prior to interfacing with the dispensing system. This analysis, however, deals with the use of the hygienic cap directly in dispensing systems and does not meet the arguments that it is also usable for storage and transportation and is usable in the same manner as conventional caps.
 
 
 16
 In establishing an implied license on summary judgment, the evidence is viewed in a light most favorable to the party opposing the motion (in this case Elkay, the patentee) and all doubts are resolved in favor of this party. Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995) In this case we are faced with a question of fact as to whether the frangible cap sold by Blackhawk can practicably be useful principally for the purpose of sealing water bottles during storage and transportation and a question of fact as to whether the cap could reasonably be used in a conventional system, i.e., would it be reasonable from a business perspective to use the caps in the same manner as conventional caps, see Bandag, 750 F.2d at 925, 223 USPQ at 998 (considering whether the noninfringing alternatives "would have been unwise from a business standpoint"). The district court, however, never addressed these items, and the movant does not even proffer argument on the questions. Moreover, the only evidence of record on the issue--the trade literature indicating advantages to use of the frangible cap during transition from conventional to hygienic dispensing systems--somewhat favors the party opposing the motion. Under these circumstances, we must conclude that the district court erred by granting summary judgment.
 
 
 17
 As to the second requirement of an implied license, that the circumstances of sale plainly indicate that the grant of an implied license should be inferred, we find no issue of material fact. In Met-Coil we looked at whether the patent owner placed any restrictions on the use of its invention at the time of sale in order to determine whether the grant of a license should be implied.
 
 
 18
 In that case, we found that notices of restrictions after the time of sale were insufficient to negate an implied license. Met-Coil, 803 F.2d at 687, 231 USPQ at 476. We said that after-the-fact notices are of no use in ascertaining the intent of the patent owner and customers at the time of the sales. Id. at 687, 231 USPQ at 476.
 
 
 19
 In this case, the district court found that the license agreement between Elkay and Blackhawk was unrestricted. The court acknowledged that the customer's right to use a purchased product could be restrained but that the license agreement contained no clear and unambiguous restraint. We agree.
 
 
 20
 In the license agreement, Elkay broadly granted Blackhawk "the right and license under the ELKAY TECHNOLOGY to manufacture, have manufactured, use and sell HYGIENIC CAPS throughout the United States and Canada." The only restriction placed on this broad grant is against sublicensing. The district court, however, correctly found that Blackhawk was selling the caps, not sublicensing them. Moreover, the statement in the license that "ELKAY and BLACKHAWK acknowledge that the purpose of this Agreement is to enable BLACKHAWK to manufacture, market, sell and distribute HYGIENIC CAPS for use with ELKAY DISPENSING SYSTEMS manufactured and/or marketed by or for Elkay" is merely precatory and does not recite a positive restriction.
 
 
 21
 Thus, the district court correctly concluded that Elkay's license to Blackhawk was unrestricted. Having failed to place any restrictions on Blackhawk at the time of license, Elkay cannot later try to restrict Blackhawk's sales. Accordingly, Elkay's attempt to place restrictions on Blackhawk's sales by sending letters to bottle water distributors, including customers of Blackhawk, warning them of possible infringement was ineffective; Blackhawk had the right to make, use, and sell frangible caps without restriction.
 
 
 22
 The only restrictions which could have been placed on the sale of these caps would have been those imposed by Blackhawk. However, the court did not find that Blackhawk's sales were restricted in any way, and the parties do not argue that Blackhawk imposed any such restrictions. Indeed, Blackhawk's sales literature touted the fact that the caps could be used in a conventional water system during a transition period. Thus, we conclude there is no issue of material fact as to whether the sales of the caps were restricted in any way. The district court, therefore, did not err in holding, as to the second requirement of an implied license, that an implied license could be inferred from the circumstances of sale. Thus, the ultimate question of whether a license should be implied will turn on the court's resolution of the issue of noninfringing uses.
 
 CONCLUSION
 
 23
 For the reasons stated above, we reverse and remand for further proceedings to resolve the questions of whether the claimed storage and transportation use of the frangible caps, and use of the frangible caps in the same manner as a conventional cap in a conventional system, constitute reasonable or practical noninfringing use.
 
 
 24
 RADER, Circuit Judge, concurring.
 
 
 25
 I concur in the decision of the court to reverse and remand, and I agree with the reasoning of the court's opinion insofar as it relates to the first requirement for an implied license--that the bottle caps have no noninfringing uses. I disagree, however, with the reasoning of the court's opinion insofar as it relates to the second requirement for an implied license--that the circumstances of the sale of bottle caps plainly indicate an implied license to use the patented liquid dispensing system. I believe the district court failed to recognize factual disputes affecting this issue.
 
 
 26
 The court's opinion indicates that because the Elkay-Blackhawk license was unrestricted, the grant of an system license can be inferred from the circumstances. However, the Elkay-Blackhawk license agreement gives Blackhawk the right to make and sell caps only. The agreement does not grant rights to practice (or allow its customers to practice) the system claims of the '778 patent. In fact, such other rights are expressly excluded from the scope of the license:
 
 
 27
 Nothing herein shall be deemed to confer upon BLACKHAWK any license to use ELKAY TECHNOLOGY for any purpose other than the manufacture of HYGENIC CAPS.
 
 
 28
 Accordingly, on its face, the Elkay-Blackhawk license conveys no more than the right to make and sell bottle caps.
 
 
 29
 This court has previously held that a "patent owner's unrestricted sale of a machine useful only in performing the claimed process or producing the claimed product" is a circumstance that plainly indicates the grant of a license to the claimed process or product. Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687, 231 USPQ2d 474, 476 (Fed.Cir.1986). However, in the present case, the court has already found that there are genuine factual issues as to whether the bottle caps may have noninfringing uses. On consideration of a motion for summary judgment, these open factual issues must be resolved in favor of the non-movant, Elkay. See Transmatic, Inc. V. Gulton Indus., Inc., 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995). In my view, summary judgment is inappropriate on the issue of whether Blackhawk's license to sell bottle caps, which I assume for these purposes to have other noninfringing uses, implies a broader license to practice the system claimed in the '778 patent.
 
 
 30
 Moreover, even if the district court finds on remand that the Blackhawk bottle caps have no noninfringing uses, there will still be factual issues that must be resolved to determine whether the circumstances imply the grant of a system license. See Met-Coil, 803 F.2d at 687 (patentee's unrestricted sales of product with no noninfringing uses creates a prima facie case of implied license, subject to rebuttal by facts to the contrary). In particular, the express purpose of the Elkay-Blackhawk license agreement was to allow Blackhawk to make caps for Elkay customers:
 
 
 31
 ELKAY and BLACKHAWK acknowledge that the purpose of this Agreement is to enable BLACKHAWK to manufacture, market, sell and distribute HYGENIC CAPS for use with ELKAY DISPENSING SYSTEMS manufactured and/or marketed by or for ELKAY.
 
 
 32
 Blackhawk did, in fact, sell its caps under the trade name "WATER SAFE," which is a clear indication that they were sold for use with Elkay's "WATER SAFE" systems. These matters raise at least a factual issue as to whether a reasonable customer of Blackhawk's would conclude that it had license to use the purchased caps in other infringing systems, such as Ebco's "WATERGUARD" system.
 
 
 33
 In short, the district court's conclusion on the second part of the implied license test was based entirely on its finding that the Elkay-Blackhawk license was unrestricted and that the caps had no noninfringing uses. Having reversed the district court on the noninfringing uses issue, this court has removed the basis for the district court's inference of an implied license. Accordingly, I consider the question of whether the circumstances imply the grant of an implied system license to still be "in play."
 
 
 
 [1]
 Ebco does not refute this argument or challenge Elkay's description of Blackhawk's cap, and the district court made no finding on this point