GLASS EQUIPMENT DEVELOP-
MENT, INCORPORATED,
Plaintiff–Appellant,

v.

BESTEN, INC., Defendant–
Cross Appellant,

and

Simonton Windows Company,
Defendant–Appellee.

Nos. 96–1467, 96–1481.

United States Court of Appeals,
Federal Circuit.

April 5, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied May 13, 1999.

Thomas H. Shunk, Baker & Hostetler, of Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief was Wade A. Mitchell. Of counsel on the brief was Linn J. Raney, Watts, Hoffmann, Fisher & Heinke, of Cleveland, Ohio.

Michael W. Vary, Jones, Day, Reavis & Pogue, of Cleveland, Ohio, argued for defendant-cross appellant. With him on the brief was Cheryl L. Farine. Of counsel on the brief were Gregory A. Morgan and J. Miles Morgan, Young, Morgan & Cann, of Clarksburg, West Virginia.

Before RICH, NEWMAN, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

Glass Equipment Development, Inc. (GED) appeals from that portion of the June 27, 1996 decision of the United States District Court for the Northern District of West Virginia granting a summary judgment that Besten, Inc. (Besten) is not liable for inducing infringement of GED's method patent No. 4,628,582 (the '582 method patent) by Simonton Windows Company (Simonton) because Simonton had an implied license to use the method. Besten cross-appeals from that portion of the judgment dismissing its antitrust counterclaim with prejudice. We reverse the grant of summary judgment that Besten had no liability for inducement to infringe because Simonton had an implied license, since we hold that Simonton had no implied license under the patent in suit. We affirm the summary judgment dismissal of Besten's antitrust counterclaim because, assuming that Besten's relevant allegations are true, GED cannot have any antitrust liability, and we remand the case.

## BACKGROUND

This case involves the fabrication of "spacer frames" that are used in the manufacture of thermally insulating glass windows. Spacer frames are generally composed of hollow aluminum bars that are joined at their ends with "corner keys" and both are coated with sealant/adhesive so that, when the spacer frame is sandwiched between two sheets of glass, an air- and moisture-tight seal is formed between the frame and the glass and an insulating space is formed between the glass sheets.

GED is the assignee of U.S. Patent No. 4,530,195 (the '195 apparatus patent), which claims spacer frame assemblies. Hinged corner keys that lock in position when completely folded (folding, locking corner keys) are elements of the apparatus patent combination claims but are not claimed independently. GED licensed Allmetal, Inc. (Allmetal) under this patent to manufacture various spacer frame components, including folding, locking corner keys.

GED is also the assignee of the '582 method patent in suit, which claims methods for making spacer frame assemblies

using a linear extruding machine (herein referred to as the claimed linear method). The method patent's independent claim calls for, *inter alia*, linearly connecting four spacer frame segments together using folding, locking corner keys in the unfolded position, moving the aligned frame segments through a linear extruding machine which applies sealant/adhesive to the frame segments and corner keys, pivoting the coated frame segments about the axes of the corner key hinges so that the corner keys lock in place, and joining the free ends together to form a rectangular frame. *See '582 patent, col. 12, ll. 22–57.*

Simonton, a manufacturer of insulated glass windows, bought folding, locking corner keys from Allmetal for a period of time before 1988 and used the keys to make spacer frames by a method that did not infringe the '582 method patent. In 1988, Simonton purchased a linear extruding machine from Besten and began using it to make spacer frames, still using folding, locking corner keys purchased from Allmetal. GED is a competitor of Besten in the sale of linear extruding machines. In 1993, GED brought suit against Simonton, alleging infringement of several of the method patent claims, and against Besten for allegedly actively inducing Simonton to infringe. *See* 35 U.S.C. § 271(b).

Simonton settled with GED in November 1994, admitting infringement of the '582 method patent. Consequently, Simonton is not a party to this appeal.

Besten argued that GED was estopped from asserting that Simonton infringed the method patent and therefore Besten could not be liable for inducing Simonton to infringe. Besten's estoppel argument was based on a theory that Simonton had an implied license to practice the claimed linear method. This theory was in turn based on Besten's assertion that there were no uses of the corner keys Simonton bought from GED's licensee Allmetal that did not infringe the method patent.

Besten also counterclaimed that GED's lawsuit was part of an attempt to monopolize the market for spacer frame linear extruding machines, as to which GED and Besten are competitors, in violation of section 2 of the Sherman Act and the corresponding West Virginia statute.

Besten moved for summary judgment on its implied license defense. In response, GED introduced evidence of two noninfringing spacer frame manufacturing methods that can utilize folding, locking corner keys—the "handgun" and "cartwheel" methods (the "handgun" method involves manual spraying of sealant/adhesive on an assembled spacer frame and the "cartwheel" method involves passing an assembled spacer frame through a sealant/adhesive extruding machine so that one frame segment is coated, "cartwheeling" the frame so that another frame segment is coated on the next pass through the extruding machine, and repeating the process so that all frame segments are coated).

In an unpublished opinion, the district court stated that the '195 apparatus and '582 method patents ought to be "read together" to establish that the intended purpose of the corner keys produced by Allmetal under the '195 apparatus patent license was to manufacture insulating windows via the claimed linear method. This was error. The court then stated that resolution of Besten's summary judgment motion depended on whether there were "commercially viable" (*i.e.,* competitive) noninfringing uses for the folding, locking corner keys sold by Allmetal.

In its later, published opinion, *Glass Equipment Development, Inc. v. Simonton Windows Co.,* 929 F.Supp. 227, 229 (N.D.W.Va.1996) (*GED I*), the court found that the folding, locking corner keys sold by Allmetal had indeed been used to manufacture spacer frames via the noninfringing cartwheel method by Louisiana Pacific Company from 1981–83 and by Simonton until 1988, but that there was no noninfringing use of the corner keys as of September 1995. The district court also found that these companies had changed from the cartwheel method to the patented lin-

ear method because the latter was *the most profitable* manufacturing method. The court stated that the noninfringing methods of using the corner keys could not support the development and continuation of an ongoing business, because any business using a noninfringing method would be undersold by another business using the patented linear method. Based on these findings, the court held that (1) there were no *current* "commercially viable" noninfringing uses of the folding, locking corner keys sold by Allmetal; (2) Simonton therefore *had an implied license through purchase and use of the corner keys from GED's licensee Allmetal to use the patented linear method,* and could not be held liable for infringement of that patent; and (3) because Simonton was not an infringer, Besten could not be held liable for inducing Simonton to infringe. Consequently, the court granted summary judgment in favor of Besten on its implied license defense. *See GED I,* 929 F.Supp. at 229–30.

Based on its summary judgment in favor of Besten on the implied license defense, the court found that Besten had the right to sell linear extruding machines to companies that wished to purchase folding, locking corner keys from Allmetal and thereby obtain an implied license to practice the patented linear method. The court concluded that Besten had therefore suffered no antitrust damages and dismissed Besten's antitrust counterclaim with prejudice.

GED appeals the district court's grant of summary judgment in favor of Besten concerning its inducement of infringement allegation, and Besten appeals the court's dismissal of its antitrust counterclaim.

*ANALYSIS*

■ We review a district court's grant of summary judgment de novo. See, e.g., *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773, 34 USPQ2d 1822, 1824 (Fed.Cir.1995). Summary judgment is not appropriate unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the parties do not contest the relevant underlying facts, our review of the court's decision is plenary. *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 877–78, 37 USPQ2d 1169, 1172 (Fed.Cir. 1995) (citing *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 765, 9 USPQ2d 1417, 1424 (Fed.Cir.1988)). We will now consider the implied license issue followed by the antitrust counterclaim.

### I. *The Implied License Defense*

■ The existence of an implied license is a question of law which we review de novo.[1] *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed.Cir.1986). Besten correctly asserts that if Simonton did have an implied license under the '582 patent to assemble spacer frames by the methods claimed therein, GED would be estopped from maintaining a suit against Simonton for infringement and Besten could not be liable for inducing Simonton to infringe. See *DeForest Radio Tel. & Tel. Co. v. United States,* 273 U.S. 236, 241, 47 S.Ct.

---

1. This case involves the question of whether the sale of an unpatented article grants an implied license to practice one or more methods claimed in a separate patent. This case does *not* involve the so-called "first sale" doctrine, as was argued to, and thus discussed by, the district court. The first sale doctrine stands for the proposition that, absent unusual circumstances, courts infer that a patent owner has given up the right to exclude concerning a patented article that the owner sells. Here, where the articles sold were corner keys, which are not themselves patented (they are merely embodiments of an unpatented element of the '195 patent claims), and the license issue concerns GED's right to exclude concerning the *method* patent, not the *apparatus* patent, the first sale doctrine is inapplicable to the analysis of the facts. See *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 924, 223 USPQ 982, 997 (Fed.Cir.1984) (holding first sale doctrine inapplicable where equipment was sold and license/infringement issue concerned patent claiming method of using equipment).

366, 71 L.Ed. 625 (1927) (holding existence of license, even if implied, to be complete defense to action for infringement); see also *Met–Coil,* 803 F.2d at 687, 231 USPQ at 477 (stating that, absent any direct infringement because of implied license, there can be no inducement of infringement).

■■ When, as here, a party argues that the sale of a device carries with it an implied license to use that device in practicing a patented invention, that party has the burden to show that, *inter alia,* the purchased device has no noninfringing uses. See *Carborundum,* 72 F.3d at 878, 37 USPQ2d at 1172 (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,* 750 F.2d 903, 925, 223 USPQ 982, 998 (Fed.Cir. 1984)).[2] The district court concluded that Besten had shown that this test was satisfied, based on its finding that, *as of September 1995* (the time of the final summary judgment hearing), there were no "commercially viable" methods of using the corner keys that did not infringe the '582 method patent.

### Noninfringing Uses

In *Bandag,* we reviewed the district court's judgment to determine whether any of the potential noninfringing uses of the patented method were reasonable. See *Bandag,* 750 F.2d at 925, 223 USPQ at 998 (reversing holding that infringement defendant had implied license to practice claimed invention). Here, two aspects of the district court's noninfringing use analysis were in error and led to an incorrect conclusion that there were no noninfringing uses of the corner keys. First, the court improperly limited its analysis of the existence of noninfringing uses to the time of the final summary judgment hearing. Second, the court applied an overly restrictive profitability or "commercially viable"

requirement to the noninfringing uses. We address each of these aspects.

### A. The Time Frame

■ The district court concluded that GED's failure to submit evidence showing a noninfringing use by at least one spacer frame manufacturer that was ongoing at the time of the last summary judgment hearing, viewed in light of Simonton's and Louisiana Pacific's earlier change from the noninfringing cartwheel method to the patented linear method, showed that there was no current noninfringing use of the corner keys. See *GED I,* 929 F.Supp. at 230. The court's time frame should not have been so limited, particularly where Besten had made no showing that changes in the insulated window business that were unrelated to commercial implementation of the patented linear method had caused the previously used noninfringing uses to become unreasonable for all insulated window manufacturers.

### B. The Commercial Viability Requirement

■ The district court required that any potential noninfringing method be "commercially viable," *i.e.,* that it permit the user to sell the resulting device at a profit and "afford the development and continuation of an ongoing business." *GED I,* 929 F.Supp. at 229 (citing *Cyrix Corp. v. Intel Corp.,* 846 F.Supp. 522, 541 (E.D.Tex. 1994), for definition of "commercially viable"). Applying this definition, the court held that only the most profitable method of using the corner keys would be acceptable. See *id.* at 230 ("If the linear extrusion method is more profitable than other methods of making insulated windows using folding, locking corner keys, then such methods cannot 'afford the development

---

**2.** A finding of no noninfringing uses does not necessarily compel a finding of an implied license to freely practice the patented invention. See *Carborundum,* 72 F.3d at 878, 37 USPQ2d at 1172 (holding that if implied license is found, scope of license must also be determined if in issue); see also *Met–Coil,* 803 F.2d at 686–87, 231 USPQ at 476 (noting that circumstance of sale may preclude finding implied license even if there are no noninfringing uses, with example thereof being original sale accompanied by express notice negating grant of implied license).

and continuation of an ongoing business.'"). The court's requirement that an acceptable noninfringing use be the most profitable alternative was incorrect.

■ *In Bandag,* we held that a legally acceptable noninfringing use need not be as profitable as the patented method—it need only be reasonable.[3] Given the undisputed facts of this case, we hold that Besten did not meet its burden to show that there are no noninfringing uses of the folding, locking corner keys sold by Allmetal under the apparatus patent license. Besten's failure to meet its burden with respect to this element of the applicable implied license test compels us to reverse the district court's grant of a summary judgment in favor of Besten on the implied license issue.

## II. *The Antitrust Counterclaim*

The district court dismissed Besten's antitrust counterclaim with prejudice because the court concluded that Besten had suffered no antitrust damages. This conclusion was based on the court's holdings that purchasers of folding, locking corner keys from Allmetal had an implied license to practice the patented linear method, and that Besten consequently was permitted to sell its linear extruder machines to those corner key purchasers for use in practicing that method. *See GED I,* 929 F.Supp. at 230. On appeal, both parties argue that the district court erred in dismissing this counterclaim because no discovery on that issue had been performed. We affirm the district court's dismissal because, assuming that all of Besten's relevant allegations are true, GED cannot have any antitrust liability.

In its antitrust counterclaim, Besten alleged that GED had elsewhere brought suit against Windsor Window Company, a window maker that was using Besten's linear extrusion machines to manufacture spacer frame assemblies, and Besten, asserting infringement and inducement to infringe, respectively, of the '582 method patent. Besten also alleged that GED had threatened analogous infringement suits against other companies that were using, or considering using, Besten's linear extruding machines to manufacture spacer frames. Besten alleged that these actual and threatened patent infringement lawsuits by GED violated Section 2 of the Sherman Act and the corresponding West Virginia statute.

■ A patent owner who brings a lawsuit to enforce the statutory right to exclude others from making, using or selling the claimed invention is exempt from the antitrust laws, even though such a suit may have an anticompetitive effect, unless the infringement defendant "proves (1) that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), or (2) that the infringement suit was a mere sham to cover what is actually no more than an attempt to interfere directly with the business relationships of a competitor, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)." *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068, 46 USPQ2d 1097, 1104 (Fed.

3. The issue in *Bandag* was whether a second-hand purchaser of tire retreading equipment that had been specifically designed to practice a patented retreading method had an implied license to practice the patented method. Bandag, the patent assignee, showed evidence of several potential noninfringing uses, including reselling the equipment (as a package or piecemeal); using the equipment to recap tires by a noninfringing method (which would have required modification of several machine components); using the equipment as

replacement parts; and refraining from operating the equipment until the tire recapping patent expired (which would have required that the equipment remain idle for some 18 months after it was ready for use). *See Bandag,* 750 F.2d at 923–25, 223 USPQ at 997–98. We reversed the district court, holding that the infringement defendant had failed to show that the alternatives to infringement were unavailable or unreasonable. *See id.* at 925–26, 750 F.2d 903, 223 USPQ at 998–99.

Cir.1998) (internal quotation omitted). Here, Besten did not allege that GED obtained the '582 method patent through knowing and willful fraud upon the Patent Office, or that GED's actual or threatened infringement suits were sham litigations. Therefore, where Besten's counterclaim was grounded only on GED's attempts to enforce its right to exclude others from practicing the methods claimed in its '582 patent, there is no reasonable possibility that the counterclaim could succeed. Consequently, we affirm the district court's dismissal of this counterclaim with prejudice.

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment on Besten's implied license defense. We hold that GED is entitled to a judgment as a matter of law that Simonton did not have an implied license to practice the invention claimed in the '582 method patent. We affirm the dismissal of Besten's antitrust counterclaim, and remand the case for further proceedings consistent with this opinion.

*REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.*