APPLERA CORPORATION and Roche
Molecular Systems, Inc., plaintiffs,

v.

MJ RESEARCH INC. and Michael
and John Finney, defendants.

No. 3:98CV1201 (JBA).

United States District Court,
D. Connecticut.

Feb. 5, 2004.

See also 297 F.Supp.2d 459, 2004 WL
178577.

Asim Varma, David Gersch, Michael J.
Klyce, Jr., Arnold & Porter, Washington,
DC, James Sicilian, Day, Berry & How-
ard–Htfd–CT, Hartford, CT, Jennifer Gor-
don, Orrick, Herrington & Sutcliffe, New
York City, Jennifer K. Lawson, Mario R.
Borelli, Day, Berry & Howard, Hartford,
CT, Edward R. Reines, Weil, Gotshal &
Manges, Redwood Shores, CA, John Josef
Molenda, Patrick J. Hoeffner, Sharon
Yang, Orrick, Herrington & Sutcliffe, New
York City, James T. Shearin, Pullman &
Comley, Bridgeport, CT, for Plaintiffs.

Albert L. Jacobs, Jr., Gerard F. Dieb-
ner, Joseph M. Manak, Greenberg Trau-
rig, New York City, C. Allen Foster, Kevin
E. Stern, Greenberg Traurig, LLP, Wash-
ington, DC, Daniel A. Ladow, Graham &
James, New York City, Donna Nelson Hel-
ler, Harold Bolton Finn, III, Patrick J.
McHugh, Finn, Dixon & Herling, Stam-
ford, CT, John E. Beerbower, Cravath,
Swaine & Moore, New York City, Joseph
B. Darby, III, Greenberg & Traurig, Bos-
ton, MA, for Defendants.

**Ruling on Motion in Limine to Exclude
Evidence of and Arguments Based
Upon Plaintiffs' Bringing of this
Action and Threats of Similar Ac-
tions [Doc. # 667(1) ]**

ARTERTON, District Judge.

Plaintiffs Applera Corp. and Roche Mo-
lecular Systems, Inc. seek to exclude de-

fendant MJ Research Inc.'s evidence and arguments that plaintiffs threatened thermal cycler suppliers with litigation for patent infringement, and followed up their threats to MJ with this litigation, as part of an effort to secure licenses for improper and anticompetitive purposes. Applera claims that this evidence is legally irrelevant since such conduct is immunized from antitrust liability under the *Noerr–Pennington* doctrine. For the reasons discussed below, plaintiffs' motion is GRANTED.

## I. Discussion [1]

■ It is well established that a patent owner bringing suit for patent infringement "is exempt from the antitrust laws, even though such suit may have anticompetitive effect, unless the infringement defendant proves ... that the infringement suit is a mere sham." *In re Independent Service Organizations Antitrust Litigation*, 203 F.3d 1322, 1326 (Fed.Cir.2000). This doctrine, originally developed to provide antitrust immunity to entities petitioning public officials, *see Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *Mine Workers v. Pennington*, 381 U.S. 657, 669–70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), has two

components. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.... Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part [of the test], the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).

■ Plaintiffs claim that this suit, which in relevant part charges defendants with inducing infringement of their PCR process patents, is not "objectively baseless" because there is evidence that MJ "(1) specifically designs, tests, and optimizes its thermal cyclers and consumables for PCR [2]; (2) pre-programs its thermal cyclers for the performance of PCR [prior to 2001] [3]; (3) heavily advertises and promotes its thermal cyclers for PCR [4]; (4) advises and assists its customers in implementing PCR on its thermal cyclers [5]; that (5) over eighty percent of MJ's customers use their thermal cyclers for PCR [6]; and

---

1. The Court assumes familiarity with the facts of this case. *See, e.g.* Ruling on Plaintiffs' Motion to Exclude MJ's Evidence and Arguments Claiming PCR Rights are Tied to Authorized Thermal Cyclers [Doc. # 874].

2. *See, e.g.*, Deposition Transcript of John Hansen ("Hansen Tr.") [Doc. # 670, Ex. 4] at 159, 404–05, 499–500; Deposition Transcript of Michael Mortillaro [Doc. # 670, Ex. 5] at 55; Deposition Transcript of Daniel Sullivan [Doc. # 670, Ex. 6] at 142–43, 146–47, 217–18.

3. *See, e.g.* Deposition Transcript of Michael Finney ("Finney Tr.") [Doc. # 670, Ex. 7] at 182–83, 201–04, 207–08, 213–15, 219. MJ states that it removed the instrument pro-

gramming training examples from the computer in its thermal cyclers in January 2001. See Declaration of John Finney [Doc. # 745] at ¶ 6.

4. *See, e.g.*, Hansen Tr. [Doc. # 670, Ex. 4] at 254–64, 267–71, 274, 285–90; MJ Research Notebook [Doc. # 670, Ex. 4].

5. *See* Deposition Transcript of Robin Buell [Doc. # 670, Ex. 8] at 50–55, 70, 158–59, 163–65.

6. *See* M Finney Tr. [Doc. # 670, Ex. 7] at 175–76 ("I would guess of the thermal cyclers that we are currently selling at this point, perhaps 20 percent are never used to perform PCR"); Letter from Joseph Smith, PE to Michael Fin-

(6) the success of MJ's thermal cycler business is attributable to PCR [7]; [and] (7) few of MJ's customers have any independent end user license to practice PCR on their thermal cyclers.[8]" Memorandum in Support of Plaintiffs' Motion to Exclude Evidence of And Arguments Based Upon Plaintiffs' Bringing of this Action and Threats of Similar Actions [Doc. # 670] at 9. Applera's evidence on inducement is comprised largely of MJ's own documentation and the deposition testimony of MJ employees, and MJ has not challenged the veracity of the MJ documentation.

As discussed in the Court's ruling of January 28, 2004, it is not disputed that Applera's patents cover the use of a thermal cycler to perform PCR in Applera's fields. *See* Ruling on Motion in Limine to Exclude MJ's Evidence and Arguments Claiming PCR Rights are Tied to Authorized Thermal Cyclers [Doc. # 874] at 6–7. Defendants, as a supplier of thermal cyclers, may be liable if it is found that they "actively induce[d] infringement" of Applera's patents. *See* 35 U.S.C. § 271(b). To prove their inducement claim, plaintiffs must establish that defendants' "actions induced infringing acts and that [they] knew or should have known [their] actions would induce actual infringement." *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed.Cir.2003) (quoting *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990)). "In-

ducement requires proof that the accused infringer knowingly aided and abetted another's direct infringement of the patent." *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed.Cir.1999). Whether defendants in fact induced infringement of plaintiffs' patents is a matter for trial. Facts in dispute, for example, include whether MJ's actions caused the direct infringement of the patent, as MJ has stated that it told its customers that they needed to obtain end user licenses from Applera to perform PCR on its thermal cyclers. The evidence that Applera has submitted, however, is fully sufficient to establish that plaintiffs had a realistic expectation of succeeding in their claims against defendants on infringement and inducing infringement, such that they were making proper use of the judicial system as patent holders exercising their patent rights.[9] As was disclosed to Applera during discovery, MJ's counsel informed Michael Finney that counsel was not able to "guarantee that [Applera] could not bring a credible action against you." *See* Letter of Joseph Darby to Michael J. Finney, June 7, 1994 [Doc. # 670, Ex. 2]. From Applera's evidence, it is clear the litigation it brought or threatened to bring was not objectively baseless, and MJ offers nothing to show that no reasonable litigant could believe there was a realistic chance of success on the infringement claim, or that plaintiffs had no interest in the outcome of

---

ney, MJ, Jan. 30, 1998 [Doc. # 671, Ex. 2] at 1 (stating that "worldwide, at least 93% of thermal cyclers need authorization" and offering to discount the royalty to reflect the 7% of thermal cyclers not used for PCR).

7. *See* MJ Memorandum dated Aug. 28, 1992 [Doc. # 670, Ex. 9] at MJ 6506263 ("The success we have achieved here did not just happen. We've ridden the wave of growth in PCR, but we haven't had any claim to the idea ...."); Finney Tr. [Doc. # 670, Ex. 7] at 145.

8. *See, e.g.*, MJ Memorandum dated June 1998 [Doc. # 670, Ex. 10] at MJ 7002391 ("In spite of everything we are dealing with regarding PE and the stickers, the truth is most people don't bother to pay PE and get the sticker [i.e. end user license].").

9. In ruling on the parties' previous antitrust summary judgment motions, the Court (Squatrito, J. presiding), *see* Memorandum of Decision and Order [Doc. # 624], did not address whether this suit and Applera's threats of litigation were entitled to antitrust immunity.

the lawsuit itself.[10] Thus, plaintiffs' suit is entitled to antitrust immunity.

■ MJ posits that the *Noerr–Pennington* doctrine is limited to a case involving a single threat or lawsuit, and does not apply in this case because the plaintiffs engaged in a pattern of threats, many of which they have not acted upon, and which were based on legal theories that have since been withdrawn or dismissed by the Court. MJ's argument that plaintiffs' threats of suit and suit lose their immunity because "plaintiffs' legal strategy has been part and parcel of its monopolistic scheme ....", Defs.' Opposition [Doc. # 684] at 23, relies on *Primetime 24 Joint Venture v. National Broadcasting Co., Inc.*, 219 F.3d 92 (2d Cir.2000).[11] In *Primetime*, the Second Circuit concluded that in cases "in which the defendant is accused of bringing a whole series of legal proceedings ... [t]he relevant issue is whether the legal challenges are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Id.* at 101 (citation and internal quotation marks omitted). *Primetime*, however, does not apply to this case, as this case concerns not "simultaneous and voluminous" legal proceedings, but rather a single lawsuit with "concerted efforts incident to litigation, such as prelitigation 'threat letters.'"

*Primetime*, 219 F.3d at 100. As to these prelitigation threats, the Court in *Primetime* clearly acknowledged the extension of the *Noerr–Pennington* doctrine. *See id.* (citing *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir.1992); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1367–68 (5th Cir.1983)). The Federal Circuit has also applied the *Noerr–Pennington* doctrine in this context. *See, e.g. C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1368 (Fed.Cir.1998) (applying the two-part test for "sham" litigation to allegation that "Bard threatened and then brought suit knowing that its patents were invalid, unenforceable, or not infringed"). The Federal Circuit has found the *Noerr–Pennington* doctrine to apply even if the patent holder threatened more than one infringement suit. *See Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337, 1344 (Fed.Cir.1999) (stating that test for "sham litigations" would apply to "actual or threatened infringement suits").

It is important to recognize the context in which the Second Circuit reached its decision in *Primetime*. In *Primetime*, the television networks attempted to avoid the Satellite Home Viewers Act's requirement that the networks license their signals to satellite broadcasters at a statutorily fixed royalty fee for viewers who were not able

10. It is notable, in this regard, that MJ, not shy about engaging in motion practice, has not moved for summary judgment on inducing infringement, which would have obvious merit if indeed the suit were objectively baseless. The dismissal of a claim on summary judgement does not necessarily mean the suit is objectively baseless, however. *See Professional Real Estate Investors*, 508 U.S. at 65, 113 S.Ct. 1920 (finding that plaintiff's suit was not objectively baseless, even though summary judgment was granted in favor of defendants). While MJ notes that Applera's contributory infringement claim was dismissed by the Court, *see* Memorandum of Decision and Order [Doc. # 624], in light of

the fact that Applera's core claims against MJ remain in this suit, MJ's attempt to segregate individual claims as baseless is perplexing.

11. It should be noted that Second Circuit precedent is not binding in this case. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed.Cir.1998) (holding that "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law. This conclusion applies equally to all antitrust claims premised on the bringing of a patent infringement suit.").

to receive a sufficiently strong broadcast signal, by indiscriminately filing "huge volumes" of legal challenges to the satellite provider's estimate of the signal-strength designated households received. *See Primetime*, 219 F.3d at 95–96, 101 (characterizing the legal challenges as "automatic petitioning"). In order to determine which of these challenges had merit, a Court would have to engage in a highly individualized factual determination of the signal strength each of the thousands of households received. It was in this context that the Count found that "it is immaterial that some of the claims might, as a matter of chance, have merit." *Id.* at 101 (citation and internal quotation marks omitted).

In contrast, here there is one lawsuit at issue, and the magnitude of threats to thermal cycler suppliers is far lower than magnitude of legal challenges in *Primetime*. The number of suppliers in the market is in dispute, but does not exceed 34. In addition, the statements that Applera made to suppliers that MJ has identified all have similar factual foundations related to the conduct claimed by Applera to have been potentially infringing its patent rights. *See, e.g.* Letter of Hanna Fischer to Marc Vader Linden [Doc. # 470, Ex. 44] ("Promoting for PCR, selling to PCR users and/or supporting for PCR induces infringement. We note that your company's literature displays a typical PCR cycler, includes 'touch-down' PCR programming and advertises thermal cycler accessories to 'protect your PCRs.' We consider this to be promoting for PCR."); Letter of Hanna Fischer to Biozym Diagnostik GmbH, Sept. 29, 1997 [Doc. # 470, Ex. 46] ("[Applera] considers advertising, promoting, selling and supporting thermal cyclers for use in the PCR process in research and other certain fields to be inducement of unlicensed use of the patented process."); Letter of Hanna Fischer to Geoff Rampton, Nov. 20, 1995 [Doc. # 470, Ex. 50] ("As to the PCR process patents, Techne is advertising and promoting its thermal cyclers for use in PCR, a clear inducement of infringement under U.S. law."); Letter of Hanna Fischer to Marc Vader Linden, May 15, 1997 [Doc. # 470, Ex. 53] ("[W]e expect that Appligene must continue to support its current installed base of thermal cyclers, both from a service and technical support perspective. In doing so, Appligene will very likely be continuing to both directly infringe and induce infringement of the apparatus and PCR patent rights unless all customers have obtained the necessary rights."). MJ has also submitted evidence that some of these suppliers responded to Applera by accepting the licensing agreement in order "to avoid legal actions on the long run." *See, e.g.* Letter of B. Ganahl to Hanna Fischer, Oct. 12, 1998 [Doc. # 470, Ex. 54]; Letter of Simon Constantine to Michael Hunkapiller, Jul. 25, 1997 [Doc. # 470, Ex. 38] ("Applera widely and aggressively publicized its rights to these patents and its intent to stop any and all infringement of them by all means necessary, including active litigation as required. This threat, and promise, has been frequently repeated in our various conversations on this matter, and was a major factor in inducing us to be among the first to take a license from you . . ."); Letter of Hubert Wagner to Hanna Fischer, Oct. 19, 1995 ("Barnstead Thermolyne . . . is willing, to avoid litigation, to consider a license on terms less onerous than those proposed in your letter . . ."). This evidence of Applera's threats to thermal cycler suppliers can and must be evaluated first under the "objectively baseless" standard. The statements Applera made in letters about its position on what practices constitute infringement or inducing infringement cannot be said to be without a realistic chance of success on the merits.

While MJ notes that it has based its antitrust claims against the plaintiffs on more than simply the threats of baseless lawsuits, the plaintiffs' motion in limine is addressed only to the legal relevance of evidence of these threats as support for MJ's antitrust claim that threats of litigation were improperly used to unlawfully impair competition. As discussed above, the "pattern of threats" Applera made to thermal cycler suppliers, as identified in MJ's opposition to this motion and in MJ's earlier summary judgment submissions, *see* [Doc. # 684] at 22; [Doc. # 470, Exs. 8–9, 21–24, 38, 43–46, 50–56], are not objectively baseless and therefore are not relevant as support for MJ's antitrust claims. *See Professional Real Estate Investors*, 508 U.S. at 60–61, 113 S.Ct. 1920; *see also Pennington*, 381 U.S. at 670, 85 S.Ct. 1585 ("Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act.").

## II. Conclusion

For the foregoing reasons, Plaintiffs' Motion in Limine to Exclude Evidence of and Arguments Based Upon Plaintiffs' Bringing of this Action and Threats of Similar Actions [Doc. # 667(1)] is GRANTED, and MJ is precluded from offering evidence or making arguments that filing this patent infringement lawsuit, or making threats of similar litigation, violates the Sherman Act.

IT IS SO ORDERED.